**AMERICAN RURAL CELLULAR, INC., a Delaware corporation, Plaintiff and Appellant,**

v.

**SYSTEMS COMMUNICATION CORPORATION, a Utah corporation; and Neal M. Sorenson, an individual, Defendants and Appellees.**

No. 930415–CA.

Court of Appeals of Utah.

Feb. 21, 1995.

Andrew M. Morse and Julianne P. Blanch, Salt Lake City, for appellant.

Gayle F. McKeachnie and Clark B. Allred, Vernal, for appellees.

Before Judges BENCH, BILLINGS and WILKINS.

## OPINION

BILLINGS, Judge.

American Rural Cellular, Inc. (Cellcom) appeals the trial court's determination that Systems Communication Corporation (Syscom) was not prohibited from maintaining construction-related actions. We remand.

## FACTS

In 1990, Cellcom and Syscom entered into an agreement for the construction and management of a cellular telephone system to serve eastern Utah. As the system neared completion, Cellcom questioned Syscom's performance under the contract. Syscom responded by filing mechanics' liens on the three Cellcom properties that Syscom had improved. Cellcom brought suit, seeking to terminate the contract and to have Syscom's mechanics' liens declared illegal. Syscom counterclaimed, seeking foreclosure of its mechanics' liens and damages for breach of contract. In its response to Syscom's counterclaim, Cellcom argued that Syscom was barred from maintaining its action by Utah Code Ann. § 58–55–17 (1990), which prohibits unlicensed contractors from recovering on their contracts.

After a two-day trial, the trial court determined that Cellcom had validly terminated the contract. The trial court also found that Syscom was not barred from recovering by section 58–55–17, that Cellcom had breached the contract by failing to pay Syscom the amount it expended to build the system, and that the mechanics' liens were valid. The court awarded Syscom its attorney fees and a judgment for $116,040.96. This appeal followed.

## I. FAILURE TO COMPLY WITH LICENSING REQUIREMENTS

Cellcom argues on appeal that Syscom's failure to comply with the licensing requirements of the Utah Construction Trades Licensing Act (the Act), Utah Code Ann. tit. 58, ch. 55, precludes Syscom from recovering for materials and services provided under the contract.

Section 58–55–6(1) of the Act provides:

Any person engaged in the construction trades licensed under this chapter, or as a contractor regulated under this chapter, must apply for and be licensed under this chapter before engaging in that trade or contracting activity in this state unless specifically exempted from licensure under this section.

Utah Code Ann. § 58–55–6(1) (1990). Section 58–55–17 provides:

No contractor may act as agent or commence or maintain any action in any court of the state for collection of compensation for performing any act for which a license is required by this chapter without alleging and proving that he was a properly licensed contractor when the contract sued upon was entered into, and when the alleged cause of action arose.

*Id.* § 58–55–17. Because Syscom has not alleged or proved that it was licensed at the relevant times, sections 58–55–6(1) and 58–55–17 bar its counterclaim unless (1) Syscom was not engaged as a contractor within the statutory definition, or (2) Syscom qualifies for a statutory or common law exception to the statutory bar.

### A. Whether Syscom Was Engaged as a Contractor Under the Act

Cellcom claims that Syscom comes within two of the Act's delineated definitions of contractor, namely: (1) "any person who represents himself to be a contractor by advertising or any other means;" Utah Code Ann. § 58–55–2(5)(b) (1990), and (2) "a construction manager who performs management and counseling services on a construction project for a fee." *Id.* § 58–55–2(5)(e). Syscom, on the other hand, argues that it is not subject to the prohibitions of section 58–55–17 because Syscom was not engaged as a contractor as that term is defined by the Act.

The trial court made no express findings on this crucial threshold issue of whether Syscom is a contractor under the Act. The court, however, made the following somewhat relevant findings of fact and conclusions of law:

4. The agreement of the parties provided for a $10,000.00 per month management fee to be paid by Plaintiff, American Rural Cellular Inc. to Systems Communication Corporation, which although called a fee, in fact is substantially an engineering fee and paid for services which improved and is chargeable and allocable to the three locations which were liened by Systems Communication Corporation.

. . . .

15. The management agreement under which American Rural Cellular Inc. and Systems Communication Corporation worked provided in effect a joint venture relationship to accomplish a common goal of having the cellular system constructed and operating for the mutual advantage and benefit of both parties.

16. The Defendant, Systems Communication Corporation[,] sincerely pursued the construction and management of the system in anticipation of and reliance on future expectations of profit.

. . . .

18. The services performed by Defendant, Systems Communication Corporation, improved the liened properties and were reasonable and the charges for work performed both by outside contractors and employees of Systems Communication Corporation are properly chargeable against Plaintiff in addition to the $10,000 per month agreed upon fee.

. . . .

Based on the Findings of Fact the Court enters the following Conclusions of Law.

1. The Defendant is exempt from the requirement of obtaining a contractor's license on the basis that the parties were joint venturers. Also, the Defendant/Counter–Claimant hired licensed contractors and the enterprise entered upon

by the parties is exempt from licensing requirements because the enterprise was a public utility.

Because the trial court's written findings and conclusions are ambiguous or incomplete on the question of whether Syscom was engaged as a contractor within the statutory definition, they may be interpreted by reference to the trial court's memorandum of decision. *See Bill Nay & Sons Excavating v. Neeley Constr. Co.*, 677 P.2d 1120, 1121 (Utah 1984); *Sprague v. Boyles Bros. Drilling Co.*, 4 Utah 2d 344, 351 & n. 5, 294 P.2d 689, 693 & n. 5 (1956). In its memorandum decision, the court set forth the following conclusions of law:

1. The Defendant is exempt regarding the obtaining of a contractor's license because the parties, regardless of their own characterization, were joint venturers with a common goal of getting the system on line for their future and mutual advantage. The Defendant/Counterclaimant, by hiring licensed contractors and performance under the agreement was acting as a fiduciary to the Plaintiff and, insofar as contract duties were concerned, did so.

2. The Court concludes that the parties['] "Enterprise" was in fact a public utility.

Utah Code Annotated Section 54–2–1(19) defines a public utility to include a telephone company.

Utah Code Annotated Section 54–2–1(29) defines a telephone corporation.

The Court concludes from reading the Statute and the Statutory intent regarding regulation and the public good of encouraging the construction of cellular telephone systems (not to mention control and regulation by the Federal Communication Commission) that there was no necessity for the Defendant/Counterclaimant to have obtained a contractor's license.

3. The Court finds that the parties were fairly inventive in the preparation of their agreement in avoiding the regulatory and perhaps proprietary benefits of having to hire and retain as a separate body a professional engineer.

Syscom claims the trial court's findings and conclusions indicate that Syscom was not acting as a contractor, but rather as an agent of the owner or a participant in the company, which served as a public utility. Cellcom, on the other hand, maintains that the trial court implicitly found that Syscom was acting in the capacity of a contractor, but incorrectly ruled that Syscom was nevertheless exempt from the strictures of the Act.

We conclude that the trial court's findings are susceptible of either interpretation. For instance, the court's conclusion that Syscom "is exempt from the requirement of obtaining a contractor's license on the basis that the parties were joint venturers" might mean that the Syscom was not engaged as a contractor for Cellcom, but as a participant in the fledgling cellular company; conversely, it might mean that Syscom was engaged as a contractor for Cellcom, but that a statutory or common law exception barred the Act's application to Syscom under the circumstances of this case.

Because the trial court made no findings concerning the crucial threshold issue of whether Syscom was acting as a contractor under the Act, and the findings the trial court did make are ambiguous with respect to that issue, remand is appropriate "[u]nless the record clearly and uncontrovertedly supports the trial court's decision." *In re Quinn*, 830 P.2d 282, 286 (Utah App.1992).

Here, the record is replete with evidence supportive of both parties' positions. A document entitled "Management Agreement," which sets out the parties' contractual relationship, provides that Syscom "shall, as an independent contractor, manage and implement ... [c]onstruction, maintenance and repair of the cellular system." However, the same paragraph provides that Syscom was to do so "[S]ubject to CELLCOM'S exclusive right of unfettered control over business assets, facilities, operations, and policy decisions." The Management Agreement also provides that Syscom shall perform specific duties, including: "*Construction Supervision* SYSCOM shall supervise construction of the cellular radio and microwave systems, and at all times keep CELLCOM apprised of the status of such activities." As for Cellcom's

responsibilities, the Management Agreement provides that "CELLCOM shall execute such contracts as are recommended by SYSCOM and which are thereafter approved by CELLCOM for the construction, maintenance and lawful operation of the cellular telecommunications system."

In a document entitled "Sales Agent Agreement," in a section labeled "Relationship," the following language appears:

CELLULAR ONE and Agent acknowledge and agree that the relationship arising from this Agreement does not constitute or create a general agency, joint venture, partnership, employment relationship or franchise between them, and Agent is an independent business or an independent contractor and is not an employee of CELLULAR ONE for any purpose. Except for reasonable requirements imposed on Agent by CELLULAR ONE to ensure the high quality of service to be provided to customers of Cellular Service, Agent has the right to operate its business as it sees fit and to hire employees and to engage other personnel as Agent may deem necessary or desirable. Agent will exercise the sole and exclusive control and supervision of such persons. . . . Except for the limited purposes expressly set forth herein, Agent will in no way be the legal representative or agent of CELLULAR ONE for any purpose whatsoever.

Thus, the Management Agreement, although referring to Syscom as an "independent contractor," is consistent with Syscom's interpretation of the trial court's findings and conclusions, that is, that Syscom was not acting as a contractor, but rather as an agent of the owner or a participant in the company. However, the Sales Agent Agreement expressly disavows any general agency relationship between Syscom and Cellcom.

The record also contains ample evidence supporting Cellcom's contention that Syscom "represented [itself] to be a contractor by advertising or other means." At trial, Marie Bagshaw, executive coordinator for Cellcom, testified that Syscom had been chosen by Cellcom in part because

[t]hey had actually—they built their own buildings. They showed us buildings that they had built to put up at the cell sites. They had erected towers. They had crews to do that. . . . They had a building in their back room or their work area, their garage area, that they showed us that they had constructed. . . . One they had constructed and was going to be using for another site. One of their radio sites, two-way or a microwave. This is a building that is the same type of building that you would use for cellular to install your equipment. . . . They represented to us that they could build that building.

She also testified that Neal Sorenson, Syscom's president, "had presented to us that—you know—his people were qualified to help build the system and to help construct the buildings and whatever needed to be done," and that "that was always the understanding that we had that their crew would be used as needed to construct the system." Further, when asked whether he represented to Cellcom that Syscom had personally been involved in the construction of towers and buildings suitable for this purpose, in order to "convince" Cellcom to use Syscom to do the construction and management of the project, Neal Sorenson answered, "I did." Finally, Syscom listed itself as the general and electrical contractor on Cellcom's building permit applications.

Similarly, the record supplies ample support for Cellcom's contention that Syscom acted as "a construction manager who performs management and counseling services on a construction project for a fee." Marie Bagshaw testified that the $10,000 service fee provided for Syscom's compensation in the Management Agreement came out of the construction account, with respect to which "you could only do a draw down after you had completed a phase of the construction." She testified that "that was always the understanding we had with the Management Agreement . . . was that the 10,000 per month was a construction fee for Syscom for the use of their people to help construct the system." Ms. Bagshaw also testified that Syscom paid all its subcontractors and suppliers directly, that none of those invoices ever came through Cellcom's office, and that Mr. Sorenson never asked for authorization

to make any construction-related expenditure or to pay anyone. Finally, Mr. Sorenson testified that the work he did involved on-site management of the construction of buildings and towers required for the cellular system. He testified that he "saw that the buildings were built, the towers were erected," that he was "out there working with the crews," and that he was "responsible from Syscom to see that the cellular system was constructed." He also testified that Syscom was building the building for Cellcom and that Syscom hired numerous other people to help on that construction, including at least six subcontractors to build the buildings, wire them, pave parking areas, install locks, insulation, fencing, and do other tasks.

Conversely, the record contains evidence supporting Syscom's contention that Syscom was a telephone company, not a building contractor, and that Cellcom did not hire Syscom because it was a contractor. Mr. Sorenson testified that Syscom was "a telephone and radio company, as well as we did a lot of other forms of technical wireless communications."

Clearly, the evidence with respect to whether Syscom was engaged as a contractor within the statutory definition, or was simply an agent or participant with Cellcom, is conflicting. Thus, we have neither adequate findings of fact, nor a record that "clearly and uncontrovertedly support[ ] the trial court's decision." *In re Quinn*, 830 P.2d at 286. We therefore reverse and remand for detailed findings on whether Syscom was engaged as a contractor within the statutory definition. The trial court's findings should resolve this issue unequivocally, stating the specific subsidiary facts supporting its ultimate factual determinations. *Woodward v. Fazzio*, 823 P.2d 474, 478 (Utah App.1991).

Should the trial court determine that Syscom was engaged as a contractor subject to the Act, but that it met one or more of the statutory or common law exceptions, on the findings before us this conclusion would be in error. We therefore set forth the following legal framework for the court's guidance on remand.

**B.  Statutory and Common Law Exceptions**

The trial court listed three reasons for exempting Syscom from the requirement of obtaining a contractor's license: (1) Syscom and Cellcom were joint venturers, (2) Syscom is a public utility, and (3) Syscom hired licensed subcontractors.

■ The trial court's first reason is supported neither in law nor fact. We have found no statutory or common law basis for exempting contractors engaged in a joint venture from the licensing requirements of the Act. Moreover, as in *Betenson v. Call Auto & Equip. Sales, Inc.*, 645 P.2d 684 (Utah 1982), in which the Utah Supreme Court reversed the trial court's finding that a joint venture existed, the Management Agreement in this case lacks "any provisions for shared control of the interest or enterprise, and shared liability for losses." *Id.* at 686. Therefore, the conclusion that Syscom is exempt from the licensing requirements of the Act because the parties were joint venturers is clearly in error.

The trial court's second reason for exempting Syscom from the licensing requirements of the Act is, on the findings before us, also in error. The Act provides:

(7) The following persons are excepted from licensure under this chapter and may engage in the construction trades subject to these circumstances and limitations:

. . . .

(c) public utilities operating under the rules of the Public Service Commission on construction work incidental to their own business; . . .

Utah Code Ann. § 58–55–6(7) (1990).

The court's memorandum decision and written findings of fact and conclusions of law summarily state that "the parties['] 'Enterprise' was in fact a public utility." However, the court sets forth no subsidiary facts supporting that determination. Nor does it set forth subsidiary facts supporting the conclusion, inherent in that determination, that the work Syscom performed was incidental to its own business. While the court did find that the Management Agreement "provided in effect a joint venture relationship to accomplish a common goal of having the cellu-

lar system constructed and operating for the mutual advantage and benefit of both parties," and that Syscom "sincerely pursued the construction and management of the system in anticipation of and reliance on future expectations of profit," these findings do not amount to a finding that the work Syscom performed was incidental to its own business. On remand, the court should provide detailed findings, referencing a factual basis, on the issue of whether Cellcom is a public utility and whether the construction work Syscom performed for Cellcom was incidental to Syscom's business.

Finally, the court reasoned that Syscom was exempt from the licensing requirements of the Act by virtue of having employed licensed subcontractors. This basis for exemption is grounded in several cases that carve out exceptions to the common law rule of nonrecovery developed under the previous licensing statute, Utah Code Ann. § 58–23–1 (1967).[1] In *Govert Copier Painting v. Van Leeuwen*, 801 P.2d 163 (Utah App.1990), this court held that the Utah Legislature's adoption of a statutory bar to recovery "does not preclude the application of the previous common law exception to the general rule of nonrecovery." *Id.* at 169. We may therefore properly look to the common law to determine whether Syscom, though not fitting within any statutory exception, nevertheless may be excused from the general rule of nonrecovery.

The common law exceptions to the general rule are all grounded in the notion that there is no need for rigid insistence on proper licensure when the public is otherwise protected from the harm that the licensing statute was designed to prevent, that is, inept and financially irresponsible builders. *Id.* at 170. A canvass of germane cases reveals

that Utah courts have found several factors relevant to whether the purpose of the licensing statute has been met. First, the courts have emphasized that when the contracting party possesses knowledge and expertise in the field, it is not within the class of persons in need of the protection that the licensing statute was intended to provide. Thus, the Utah Supreme Court allowed an unlicensed contractor to recover when the contracting party was itself a licensed contractor. *Id.*; *Wilderness Bldg. Sys., Inc. v. Chapman*, 699 P.2d 766, 768 (Utah 1985); *Lignell v. Berg*, 593 P.2d 800, 805 (Utah 1979). Conversely, the court was not persuaded that property owners who contracted with unlicensed builders to "perform only the heavy work involved in constructing the cabin," reserving to themselves "the plumbing, electrical work, and the like," possessed knowledge and expertise sufficient to protect them from an incompetent contractor. *Chapman*, 699 P.2d at 768.

Second, courts have considered whether the work of the unlicensed contractor was supervised by a licensed contractor. *Id.*; *Kinkella v. Baugh*, 660 P.2d 233, 236 (Utah 1983); *Motivated Management Int'l v. Finney*, 604 P.2d 467, 468 (Utah 1979); *Fillmore Prods., Inc. v. Western States Paving*, 561 P.2d 687, 690 (Utah 1977).

Third, courts have considered the reason the contractor was unlicensed. Some courts have declined to strictly apply the prohibition when a contractor who possessed the technical competence and financial qualifications for licensure merely allowed its license to lapse, *Lignell*, 593 P.2d at 805, or made a good faith mistake regarding its coverage under a partner's license, *Loader v. Scott Constr. Corp.*, 681 P.2d 1227, 1229–30 (Utah 1984).

---

1. The previous statute required a person to obtain a license before engaging in the business of contracting. *See* Utah Code Ann. § 58–23–1 (1967). However, because the statute did not bar unlicensed contractors from bringing actions on their contracts, the Utah Supreme Court, in order to protect the public, fashioned the common law rule prohibiting unlicensed contractors from suing on their contracts. *Govert Copier Painting v. Van Leeuwen*, 801 P.2d 163, 168 n.`3 (Utah App.1990); *see, e.g., George v. Oren Ltd. & Assocs.*, 672 P.2d 732, 735 (Utah 1983); *Fillmore Prods., Inc. v. Western States Paving, Inc.*, 561

P.2d 687, 689 (Utah 1977). "In 1981, the Utah Legislature repealed the licensing statutes and replaced them, adding section 58A–1–26, which prohibited an unlicensed contractor from suing on the contract." *Govert Copier*, 801 P.2d at 168 n. 3. Title 58A was later repealed. *Id.* The licensing statute now in effect is codified at title 58, chapter 55, sections 1 through 21 of the Utah Code. *See* Utah Code Ann. tit. 58, ch. 55 (1994). The section prohibiting unlicensed contractors from suing on the contract is codified at section 58–55–17. *See* Utah Code Ann. § 58–55–17 (1994).

Finally, the courts have considered whether the party seeking the protection of the Act relied on competence inferred from the unlicensed contractor having advertised itself as a general contractor, and whether the party was protected by a performance bond. *Lignell*, 593 P.2d at 805. In all cases, the burden of demonstrating that the purpose of the licensing statute was met lay with the unlicensed contractor. *Govert Copier*, 801 P.2d at 168.

Generally, several of the above factors together provide the basis for the court's holding. For instance, in *Lignell* and *Fillmore Products* the court allowed unlicensed contractors to recover under their contracts. *Lignell* listed the following circumstances as determinative of its holding: (1) the unlicensed contractor had not failed to satisfy the licensing authority of its technical competence and financial qualification for licensure, but had inadvertently permitted its license to . lapse; (2) the owners, having previously employed the unlicensed contractor, had not relied on advertisement to infer competence on the part of the unlicensed contractor; (3) the owners usurped the unlicensed contractor's prerogatives in the construction, thus relying on their own competence rather than the unlicensed contractor's; and (4) the contractor supplied the owners with a performance bond and a labor and material suppliers payment bond, thereby making the owners more adequately assured of complete performance than they would have been by the contractor's compliance with the licensing statute. *Lignell*, 593 P.2d at 805.

In *Fillmore Products*, the court held that the owners, because they were themselves licensed contractors and therefore informed of the necessity and purpose of licensing, could not "invoke application of the general rule of denying relief to an unlicensed con-

tractor *solely* because of the latter's nonlicensing when a contract for construction is struck between them." *Fillmore Products*, 561 P.2d at 690. In so holding, the court emphasized that the unlicensed contractor was dealing with a licensed general or original contractor, and that the entire project was under the supervision of a licensed project engineer. *Id.*

There is some authority for the proposition that work performed by licensed subcontractors provides protection intended by the Act. In *Motivated Management* the court held that, because at least part of the construction was performed by a licensed contractor, or through licensed subcontractors, the defendants "would have the protection which presumably would be afforded by a licensed contractor." *Motivated Management*, 604 P.2d at 468. The court therefore reversed the trial court's dismissal of the unlicensed contractor's complaint for failure to state a claim. *Id.*

In the instant case, the court found that Syscom hired at least six named subcontractors, only two of which there is any evidence were licensed. The trial court made no findings with respect to any other factors that have been found relevant to whether the Act's intended protection was provided.[2] On remand, the court must make detailed factual findings supporting the conclusion that Cellcom received protection from the harm the Act was designed to avoid, if it determines that a common law exception applies in the circumstances of this case.

## II. COMPUTATION OF JUDGMENT AMOUNT

Cellcom argues that "the trial court's computation of the judgment amount is fraught with error." The gist of this argument is

2. A review of the record reveals that Mr. Sorenson is a "certified two-way radio technician," which certification he earned through the National Association of Business and Educational Radio "based upon possession of a valid Federal Communications Commission Radio Telephone license." The trial court may have considered this licensure, concluding in its memorandum decision that "from reading the Statute and the Statutory intent regarding regulation and the public good of encouraging the construction of

cellular telephone systems (*not to mention control and regulation by the Federal Communication Commission*) that there was no necessity for [Syscom] to have obtained a contractor's license." (Emphasis added.) The problem with reliance on Mr. Sorenson's FCC license is that the license does not appear in any way to authorize an individual to construct buildings, or otherwise take on the responsibilities of a general contractor.

that the court awarded Syscom for charges it claimed as part of its mechanics lien, but that much of that amount is in fact made up of non-lienable fees. As Syscom's counsel correctly pointed out at trial, "either it needs to go there under the lien or, if it's not to do with construction, then it's payable as the management agreement provides and the contractor's licensing statute would have no application.... I think they can't have it both ways."

The trial court did not make findings with respect to which work Syscom performed as a contractor and which work Syscom performed as part of the other duties delineated in the Management Agreement. Thus, on remand the trial court must also enter appropriate findings, because even if the court determines Syscom was a contractor, those fees payable under the Management Agreement would not be subject to the statutory bar.

### III. ATTORNEY FEES

The trial court awarded Syscom $15,-000 in attorney fees incurred in foreclosing its mechanics' liens. Pursuant to Utah Code Ann. § 38–1–18 (1988), the prevailing party in an action brought to enforce a mechanics' lien is entitled to recover its reasonable attorney fees.[3] Because we reverse and remand on the issue of whether Syscom can recover, this issue must also be decided on remand.[4]

WILKINS, J., concurs.

BENCH, J., concurs in result.

---

**3.** Section 38–1–18 provides:

    In any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action.

Utah Code Ann. § 38–1–18 (1988).

**4.** Because of our holding, we do not reach Cellcom's argument that the trial court improperly relied on the testimony of Syscom's counsel at trial in support of the awarded attorney fees.