1999 UT App 087

**A.K. & R. WHIPPLE PLUMBING AND HEATING, Plaintiff, Appellee, and Cross–appellant,**

v.

**ASPEN CONSTRUCTION, Thomas D. Guy, Claire B. Guy, and Diane M. Quinn, Defendants, Appellant, and Cross–appellees.**

**No. 971580–CA.**

Court of Appeals of Utah.

March 18, 1999.

Rehearing Denied April 8, 1999.

Joseph M. Chambers, Logan, and Kevin P. McBride, Park City, for Appellant

Steven B. Wall, Salt Lake City, for Appellee

Before WILKINS, P.J., and DAVIS and ORME, JJ.

## OPINION

WILKINS, Presiding Judge:

¶1 Appellant Aspen Construction (Aspen) appeals from a judgment awarding appellee A.K. & R. Whipple Plumbing and Heating Whipple (Whipple) $3,943 for heating, venting, and air conditioning (HVAC) work it performed, and allowing Whipple to foreclose on three separate mechanics' liens. Aspen also appeals the trial court's decision to award Whipple $7,500 in attorney fees. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶2 In 1993, Aspen, a general contractor, entered into an agreement with Whipple, a licensed plumbing contractor, to provide labor and materials for HVAC and plumbing work on three separate properties. When problems arose with the HVAC work on one of the properties, Aspen discharged Whipple and refused to remit any further payment until corrections were made. Whipple responded by filing mechanics' liens on all three properties and commencing three separate foreclosure actions that were later consolidated for purposes of trial.

¶3 Before trial, Aspen filed a motion to dismiss the HVAC portion of Whipple's mechanics' lien claim on the basis that Whipple lacked proper HVAC licensure as required by Utah Code Ann. § 58–55–604 (1998). The trial court granted Aspen's motion, however, it invoked common law principles of equity

and determined that because Whipple had conferred a benefit upon Aspen, Whipple should be awarded the value of that benefit. The court further determined that there were deficiencies in Whipple's HVAC work and therefore, awarded Whipple the value of this work, less the cost Aspen would incur in correcting the deficiencies.

¶ 4 In June 1995, the trial court issued a scheduling order which required Whipple to disclose all witnesses by August 1, 1995, and respond to all discovery requests by August 31, 1995. On September 22, 1995, Aspen filed another motion to dismiss alleging Whipple had violated the scheduling order by failing to disclose witnesses and respond to Aspen's discovery requests. The trial court denied Aspen's motion, ruling that Aspen was not sufficiently prejudiced because Whipple provided Aspen with a complete list of witnesses it intended to call at trial.

¶ 5 During trial, which took place in early October 1995, the court heard evidence concerning the value of the work Whipple had performed on the various properties. Aspen also pursued its counterclaim seeking damages for the allegedly defective HVAC work. The trial did not conclude as scheduled and was continued until November.

¶ 6 When the trial resumed in late November, the trial court allowed Ken Whipple to testify as an HVAC expert witness. Mr. Whipple, although not a licensed HVAC contractor during the earlier part of the trial, had obtained his HVAC license before the trial resumed. In response to Mr. Whipple's testimony, Aspen attempted to introduce the testimony of its expert regarding defects in the HVAC work. However, the trial court restricted the scope of this testimony because Aspen failed to list its expert as a potential expert witness.

¶ 7 At the close of trial, Aspen argued that Whipple had failed to meet the threshold requirement of establishing valid mechanics' liens. In its minute entry dated November 30, 1995, the trial court requested that Aspen prepare findings of fact, conclusions of law, and a judgment, and concluded that, because neither party clearly prevailed, any award of attorney fees would be improper.

¶ 8 Aspen's counsel prepared a monetary judgment in favor of Whipple along with proposed findings of fact and conclusions of law. Whipple objected to the proposed findings because they did not include an order specifying foreclosure of the three liens and prepared separate findings which included an order of foreclosure. Aspen's counsel objected to Whipple's proposed findings, arguing there was insufficient evidence to support a foreclosure order. Whipple then filed a motion to reopen the case to take additional evidence regarding its compliance with the mechanics' lien foreclosure statute. The trial court granted Whipple's motion "in the interests of justice."

¶ 9 On September 19, 1996, the trial court held a supplemental hearing and received evidence of the mechanics' liens and also took under advisement Whipple's request for reconsideration of an award of attorney fees. Whipple asserted that now having "prevailed" it was entitled to attorney fees as the "prevailing party." Aspen also requested attorney fees, arguing it prevailed at the outset on the claim for defective HVAC work. On March 31, 1997, the trial court entered formal findings of fact and conclusions of law and a judgment awarding Whipple $3,943 for its HVAC work. The trial court also denied Aspen's fee request, instead awarding Whipple $7,500 in attorney fees. In addition, the trial court allowed Whipple to foreclose on the three mechanics' liens and valued a portion of Whipple's plumbing work for sewer laterals at $3,200. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Aspen raises several arguments on appeal. First, Aspen contends Utah Code Ann. § 58–55–604 (1998) barred Whipple from maintaining this action and that the trial court erred in granting Whipple recovery on equitable grounds. This issue turns on the trial court's interpretation of a statute, which we review for correctness, without deference to the trial court's conclusions. *See Butterfield Lumber, Inc. v. Peterson Mortgage Corp.,* 815 P.2d 1330, 1332 (Utah Ct.App.1991). Second, Aspen argues the trial court abused its discretion in grant-

ing Whipple's motion to reopen on grounds not provided in Rule 59 of the Utah Rules of Civil Procedure. "Consideration of a motion to grant a new trial or open a judgment for additional evidence under ... [Rule 59] is a matter left to the discretion of the trial judge, and that decision will be reversed only if the judge has abused that discretion by acting unreasonably." *Paryzek v. Paryzek,* 776 P.2d 78, 81 (Utah Ct.App.1989) (citation omitted).

¶ 11 Third, Aspen claims there is insufficient evidence to support the trial court's determination that Whipple adequately complied with section 38–1–7 of the mechanic's lien statute or its valuation of Whipple's plumbing work for sewer laterals. "We review the trial court's findings of fact for clear error and its legal conclusions for correctness." *Smith v. Batchelor,* 934 P.2d 643, 646 (Utah 1997). Fourth, Aspen argues the trial court erred in denying its request for attorney fees and failed to properly allocate Whipple's attorney fee award according to its underlying claims. Whether attorney fees are recoverable in an action is a question of law, which we review for correctness. *See Robertson v. Gem Ins. Co.,* 828 P.2d 496, 499 (Utah Ct.App.1992). Finally, Aspen argues the trial court abused its discretion by refusing to dismiss Whipple's case for noncompliance with the scheduling order, permitting Ken Whipple to testify as an HVAC expert, and in limiting the testimony of Aspen's expert witness. Trial courts have broad discretion in managing the cases before them and we will not interfere with their decisions absent an abuse of discretion. *See Berrett v. Denver & Rio Grande W. R.R. Co.,* 830 P.2d 291, 293 (Utah Ct.App.1992).

## ANALYSIS

### 1. Licensing Requirements

¶ 12 Aspen contends that Whipple's failure to comply with the licensing requirements of section 58–55–604, precludes Whipple from maintaining this action and that the trial court erred in allowing Whipple to recover on equitable grounds. We agree.

¶ 13 Section 58–55–604 of the Utah Code provides that "[n]o contractor may ...

commence or maintain any action ... for collection of compensation for performing any act for which a license is required ... without alleging and proving that he [or she] was a properly licensed contractor when the contract sued upon was entered into, and when the alleged cause of action arose." Utah Code Ann. § 58–55–604 (1998). Our Legislature has determined that proper licensure is of paramount importance and that if a contractor performs work without the requisite license, it should be denied compensation. Thus, the statute serves the dual purpose of protecting the public from incompetent contractors, while sanctioning contractors who fail to obtain proper licensure.

¶ 14 However, this statutory bar is not without exception. We have recognized that the statutory bar "does not preclude the application of the previous common law exceptions to the general rule of non-recovery." *Govert Copier Painting v. Van Leeuwen,* 801 P.2d 163, 169 (Utah Ct.App.1990). Thus, a court addressing the issue of whether an unlicensed contractor may maintain an action for quantum meruit must: (1) determine whether the contractor is properly licensed or whether its status as an unlicensed contractor places it within the purview of section 58–55–604; and (2) determine whether the contractor is entitled to relief under common law principles despite its non-licensure and support that conclusion with appropriate findings of fact. In other words, if the court concludes the claim falls within the purview of section 58–55–604, but the common law exceptions apply, then the statutory bar will not preclude suit. However, if the court determines section 58–55–604 applies but the common law exceptions are inapplicable, then section 58–55–604 absolutely bars the action.

¶ 15 Here, the trial court stated "[s]ection 58–55–604 U.C.A. is controlling in this case .... [and Whipple's] failure to comply with the statute is sufficient grounds for the Motion to Dismiss to be granted as a matter of law...." The trial court then proceeded to allow Whipple to maintain its action below and ultimately recover under "principles of equity." The court failed to adequately explain which common law rules, if any, it applied in this case, or support its

decision with appropriate findings of fact. Nevertheless, because of our obligation to affirm the trial court on any available basis, *see White v. Deseelhorst*, 879 P.2d 1371, 1376 (Utah 1994), we address whether any of the common law exceptions allow Whipple to maintain its action.

¶ 16 The Utah common law exceptions are premised on the theory that rigid insistence on proper licensure is unnecessary as long as the public is otherwise protected from the harm the statute is designed to prevent. *See American Rural Cellular v. Systems Communication Corp.*, 890 P.2d 1035, 1040 (Utah Ct.App.1995). Utah courts have generally allowed unlicensed contractors to recover for quantum meruit in four instances where, notwithstanding the contractor's lack of proper licensure, the licensing statute's purpose is met.

¶ 17 First, unlicensed contractors have been allowed to recover when the party for whom the work is to be done possesses skill or expertise in the field. *See id.* Here, there is no evidence showing Aspen was knowledgeable or skilled in HVAC work. We cannot infer from Aspen's general contracting status that it possessed special skill or expertise sufficient to protect itself from incompetent HVAC work. *See Wilderness Bldg. Sys., Inc. v. Chapman*, 699 P.2d 766, 768 (Utah 1985) (rejecting unlicensed contractor's argument that contracting party's reservation of plumbing work for itself rendered it knowledgeable in that field).

¶ 18 Second, an unlicensed contractor may recover if the work it performed was supervised by a licensed contractor. *See American Rural Cellular*, 890 P.2d at 1040. The cases in which this principle has been applied have all involved supervision or labor by a properly licensed third party thereby protecting the original contracting party from the unlicensed contractor's incompetence. *See Kinkella v. Baugh*, 660 P.2d 233, 236 (Utah 1983) (refusing to apply statutory bar where unlicensed contractor was supervised by licensed contractor and therefore, original contracting party "received whatever protection is afforded by compliance with the licensing statute"); *Motivated Management Int'l v. Finney*, 604 P.2d 467, 468 (Utah 1979) (allowing unlicensed contractor to recover where "at least part of the construction was performed by a licensed contractor" because the licensed party's involvement adequately protected original contracting party); *Fillmore Prods. v. Western States Paving, Inc.*, 561 P.2d 687, 690 (Utah 1977) (providing when general contractor hired unlicensed subcontractor to provide plumbing work, unlicensed subcontractor could recover because entire project was supervised by licensed project engineer who ensured job was done properly). In this case, Aspen did not have the added protection of a properly licensed contractor to ensure the HVAC work was adequately completed. Instead, Whipple performed the work on its own without the supervision of someone with proper licensure. Thus, we conclude Whipple's HVAC work was not adequately supervised to invoke this exception to the statutory bar.

¶ 19 Third, if the reason a contractor fails to obtain proper licensure is minor and does not undermine its ability to perform its work, the unlicensed contractor may recover. *See American Rural Cellular*, 890 P.2d at 1040; *see also Loader v. Scott Constr. Corp.*, 681 P.2d 1227, 1229–30 (Utah 1984) (permitting recovery where contractor mistakenly, but in good faith, believed he could perform work under partner's license); *Lignell v. Berg*, 593 P.2d 800, 804–05 (Utah 1979) (allowing recovery where otherwise properly qualified contractor mistakenly allowed license to lapse for nonpayment of renewal fee). Here, the record shows Whipple has provided HVAC work for many years without proper licensure. Although Mr. Whipple claims he believed in good faith his general plumbing contractors license allowed him to install HVAC forced air heating systems, the fact is, it did not. Until trial in this case, Whipple had never complied with licensing requirements showing he possessed the technical competence or financial qualifications for licensure. Equally important, the trial court heard extensive evidence about the inadequacies of Whipple's HVAC work and ultimately concluded the HVAC work was deficient. Based on the foregoing, we conclude Whipple's failure to obtain proper HVAC licensure

precludes application of this common law exception.

¶ 20 Finally, courts have considered whether the contracting party relied on the subcontractor's representations that he was properly licensed and whether the subcontractor has posted a performance bond. *See American Rural Cellular,* 890 P.2d at 1041. Here, Whipple actively solicited and engaged in HVAC work for more than sixteen years. As a result, Whipple implicitly represented to its customers that it was properly licensed and qualified to perform such work. In addition, although Whipple claims it maintained liability insurance to protect its customers, Whipple has offered no evidence of a performance bond. Therefore, we conclude Whipple does not fall within this final exception to the statutory bar.

¶ 21 In sum, we have determined the trial court properly applied section 58–55–604 to this case because Whipple performed HVAC work without proper licensure. We also conclude, however, that the trial court erred in allowing Whipple to recover for HVAC work under "principles of equity" because the common law exceptions to section 58–55–604 are inapplicable in this case. We therefore reverse the trial court's ruling regarding this issue, and vacate any award to Whipple based on the HVAC work.

### 2. Motion to Reopen

¶ 22 Aspen next argues the trial court abused its discretion in granting Whipple's motion to reopen "in the interests of justice." We disagree.

¶ 23 The Utah Supreme Court has stated that it lies within the sound discretion of the trial court to grant a motion to reopen for the purpose of taking additional testimony after the case has been submitted but prior to entry of judgment. *See Lewis v. Porter,* 556 P.2d 496, 497 (Utah 1976). Furthermore, the court has directed lower courts to consider such a motion "in light of all the circumstances and grant or deny it in the interest of fairness and substantial justice." *Id.*

¶ 24 Here, the trial judge stated "[I am g]oing to grant the motion to reopen and in the interests of justice, I think there [are]

some *glaring misunderstandings in the presentation of the evidence;* and the Court is going to allow the plaintiff to re-open as requested in their motion." (Emphasis added.) In addition, the mechanics' lien claims in this case were actually litigated and the court granted Whipple's motion to address the parties' basic disagreement over the validity of the liens at issue. Testimony of the filing, service, and content of the liens had already been received into evidence. The documents sought to be introduced by the motion to reopen were exhibits to Whipple's complaint served on Aspen to commence the actions. Nothing unexpected was allowed into evidence as a result of the motion to reopen being granted. The trial court's decision did not deprive Aspen of a full and fair consideration of the issues regarding the mechanics' liens. Therefore, we conclude the trial court did not abuse its discretion.

### 3. Compliance with Mechanics' Lien Statute and Value of Lateral Work

¶ 25 Aspen also argues there is insufficient evidence to support two factual determinations by the trial court: (1) that Whipple complied with section 38–1–7 of the mechanics' lien statute; and (2) that the value of Whipple's plumbing work for sewer laterals was $3,200. In contesting the trial court's ultimate conclusions regarding Whipple's compliance with the mechanic's lien statute and the value of its plumbing work, Aspen must show either that the conclusions are incorrect given the findings or that the "factual findings underlying ... [the trial court's] determination[s] are clearly erroneous." *Cellcom v. Systems Communication Corp.,* 939 P.2d 185, 189 (Utah Ct.App.1997). On appeal, Aspen attacks the findings themselves.

[12] ¶ 26 To challenge the trial court's findings, Aspen must "marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be against the clear weight of the evidence[,]" thus making them clearly erroneous. *Id.* (citations omitted). We will uphold the trial court's findings of fact if the party

challenging the findings fails to appropriately marshal all the evidence supporting the findings. *See Allred v. Brown,* 893 P.2d 1087, 1090 (Utah Ct.App.1995).

■ ¶ 27 Here, Aspen has simply failed to meet this burden. It did not marshal all the evidence supporting the trial court's findings or show that, viewing the evidence in a light favorable to the court's rulings, the findings were clearly erroneous. Aspen ignores, for example, the fact that Whipple offered copies of the mechanics' liens into evidence which the court accepted into evidence as being authenticated documents. Aspen also disregards the extensive evidence presented at trial regarding the value of Whipple's plumbing work. Rather, Aspen merely restates those facts favorable to its position or in the alternative argues there was insufficient evidence to support the trial court's findings.

¶ 28 Although Aspen maintains it adequately marshaled the evidence in an addendum to its brief, the Utah Supreme Court has denounced the practice of marshaling evidence in an appendix stating that "[t]his does not comply with the requirement to marshal evidence. It is improper for counsel to attempt to enlarge the page limit of briefing by placing critical facts in appendices." *DeBry v. Cascade Enters.,* 879 P.2d 1353, 1360 n. 3 (Utah 1994). Worse yet, the addendum does not include a properly focused marshaling of the evidence supporting particular findings under attack, but rather is a comprehensive catalogue of all testimony in the record. Thus, we must assume the evidence supported the findings underlying the trial court's determination that Whipple complied with section 38–1–7 of the mechanics' lien statute and that it adequately valued Whipple's plumbing work. Accordingly, Aspen's argument fails.

¶ 29 We note however, that the trial court's Conclusion of Law No. 5 includes Whipple's HVAC work as part of the order of foreclosure. As previously discussed, Whipple is precluded by section 58–55–604 from recovering for its HVAC work. Thus, to the extent Conclusion of Law No. 5 is

inconsistent with this opinion, it, and any part of the judgment that follows therefrom, is vacated.

### 4. Attorney Fees

■ ¶ 30 Aspen next asserts the trial court erred in denying its request for attorney fees arguing that because it prevailed against Whipple on the HVAC portion of Whipple's mechanics' lien claim, it is the prevailing party. In light of our disposition of the preceding issues, this contention may have merit.

¶ 31 The Utah mechanics' lien statute provides "in any action brought to enforce any lien under this chapter the successful party shall be entitled to recover reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action." Utah Code Ann. § 38–1–18 (1997). In this case, although the trial court initially granted Aspen's motion to dismiss the HVAC portion of Whipple's mechanics' lien claim because of improper licensure, it went on to award Whipple the value of the work performed on Aspen's property. Based in part on this finding, the trial court concluded that Whipple was the prevailing party and entitled to an award of attorney fees. However, this conclusion may be erroneous in light of our determination that section 58–55–604 precludes Whipple from recovering for its HVAC work. Based upon our review of the record, it appears the HVAC claim was the single most important issue in this case and Aspen, having fully prevailed on the HVAC claim in this appeal, may now be entitled to prevailing party status under section 38–1–18. If on remand the trial court determines Aspen is the prevailing party[1] under section 38–1–18, then Aspen must be given the opportunity to present evidence regarding attorney fees incurred in pursuing its claim. We therefore remand this issue to the trial court for a redetermination of the attorney fees award consistent with this opinion and the entry of findings necessary to support the revised award.

---

1. On remand, the trial court may find helpful the guidance on this issue offered by *Mountain States* *Broad. Co. v. Neale,* 783 P.2d 551, 555–58 (Utah Ct.App.1989).

¶ 32 Aspen also asserts the trial court erred in failing to properly allot Whipple's attorney fees award according to its underlying claims. We agree. The Utah Supreme Court has required a party seeking attorney fees to allocate its request for fees according to its underlying claim. *See Foote v. Clark,* 962 P.2d 52, 55 (Utah 1998). The party must differentiate between the fees and time expended for "(1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees had the claims been successful, and (3) claims for which there is no entitlement for attorney fees." *Cottonwood Mall Co. v. Sine,* 830 P.2d 266, 269–70 (Utah 1992). This requirement also obligates the trial court to make findings which closely resemble the requesting party's allocation of fees on each claim. *See Foote,* 962 P.2d at 55. Finally, the trial court must clearly identify and document the factors it considered dispositive in calculating the award. *See id.* Absent such an allocation and documentation, this court cannot adequately review the trial court's decision. *See id.* at 57.

¶ 33 Here, Whipple submitted an affidavit requesting attorney fees. However, the affidavit did not differentiate between the work done that was subject to a fee award and work that was not. The court acknowledged that it "had difficulty, based on [Whipple's] attorney fee affidavit, in separating the amount of time involved with the mechanics' liens as opposed to the amount of time spent on other matters." Although Whipple's failure to apportion attorney fees was a sufficient basis for the trial court to deny its fee request, *see Utah Farm Prod. Credit Ass'n v. Cox,* 627 P.2d 62, 66 (Utah 1981), the court went on to state that "in consideration of the complexity of the case and the total amount involved, plaintiff should be awarded ... $7,500 in attorney fees...."

¶ 34 Because the trial court failed to properly categorize the fee request or detail the factors it considered in computing the award, *see Foote,* 962 P.2d at 56 (concluding "[w]here the parties' evidentiary submissions in support of a request for attorney fees are deficient, so will be the court's evaluation of

those fees"), we reverse and remand the issue of fees to the trial court for a redetermination of the prevailing party, and, based on that determination, an award of attorney fees consistent with this opinion.

### 5. Scheduling Order and Expert Testimony

¶ 35 Finally, Aspen contends the trial court abused its discretion by failing to dismiss Whipple's case for noncompliance with the scheduling order, permitting Ken Whipple to testify as an HVAC expert, and in limiting the scope of testimony provided by Aspen's expert witness.

### A. Scheduling Order

¶ 36 Aspen asserts the trial court abused its discretion in allowing Whipple to proceed with its case despite its failure to comply with the trial court's scheduling order. Because the trial judge deals directly with the parties and the discovery process, he or she has great latitude in determining the most efficient and fair manner to conduct the court's business. *See Utah Dep't of Transp. v. Osguthorpe,* 892 P.2d 4, 6 (Utah 1995). As a result, trial courts have broad discretion in determining whether a violation of a scheduling order warrants sanction. *See id.* The purpose behind a scheduling order is to allow the parties to properly prepare for trial and to save the parties from unnecessary expenses. *See DeBry,* 879 P.2d at 1361.

¶ 37 Here, the trial court determined that although Whipple failed to adequately comply with the scheduling order, Aspen was provided with sufficient information to prepare for trial. The court noted that in Whipple's response to Aspen's interrogatories, Whipple had specified the witnesses it was going to call at trial and the substance of their testimony. Thus, the trial court determined Aspen was not prejudiced by Whipple's violation of the scheduling order. Because Aspen obtained the information necessary to adequately prepare for trial, we conclude the trial court did not abuse its discretion in refusing to dismiss Whipple's case.

## B. Expert Testimony

¶ 38 Aspen also asserts the trial court abused its discretion in allowing Ken Whipple to testify as an expert regarding the cost and adequacy of Whipple's HVAC work and in limiting the scope of testimony provided by Aspen's expert witness. We conclude that any errors in this regard were harmless.

¶ 39 In order to prove its entitlement to relief on appeal, Aspen must show it was prejudiced or harmed by the trial court's action. *See Astill v. Clark,* 956 P.2d 1081, 1088 (Utah App.1998). Because we have determined section 58–55–604 precludes Whipple from maintaining an action to recover the cost of its HVAC work, the expert testimony regarding the valuation of Whipple's HVAC work is irrelevant. In other words, the cost Whipple incurred in performing the HVAC work is no longer an issue. Furthermore, Aspen does not contest the court's finding concerning the cost Aspen will incur in repairing the defective HVAC work and therefore, we assume its accuracy. *See Cellcom,* 939 P.2d at 189. Thus, the trial court's rulings regarding the admission of expert testimony could not have harmed or prejudiced Aspen in any way and therefore, we affirm the trial court's ruling on this ground.

## CONCLUSION

¶ 40 Because Whipple failed to comply with the licensure requirements of section 58–55–604 and none of the common law exceptions to the statutory bar apply, Whipple is precluded from recovering for its HVAC work. Further, we have determined the trial court did not abuse its discretion in granting Whipple's Rule 59 motion "in the interests of justice." Also, because Aspen failed to marshal the evidence in support of the trial court's findings regarding Whipple's compliance with the mechanics' lien statute and the value of Whipple's sewer lateral work, we decline to disturb those findings. We also remand the issue of attorney fees to the trial court for a redetermination of the prevailing party and a proper allocation of attorney fees to that party. Finally, Aspen was not prejudiced by the trial court's actions in failing to dismiss Whipple's case for noncompliance with the scheduling order, permitting Ken Whipple to testify as a HVAC expert, or in limiting the scope of testimony provided by Aspen's expert witness.

¶ 41 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

¶ 42 WE CONCUR: JAMES Z. DAVIS, Judge, and GREGORY K. ORME, Judge.

