2001 UT App 11

**STATE of Utah, Plaintiff and Appellee,**

v.

**Larry G. BOHNE, Defendant and Appellant.**

**No. 20000350–CA.**

Court of Appeals of Utah.

Jan. 11, 2001.

J. Bryan Jackson, Cedar City, for Appellant.

Mark L. Shurtleff, Attorney General and J. Frederic Voros, Jr., Assistant Attorney General, Salt Lake City, and Scott Burns, Iron County Attorney's Office, Cedar City, for Appellee.

Before Judges BENCH, DAVIS, and THORNE.

## OPINION

BENCH, Judge:

¶ 1 Appellant Larry G. Bohne appeals from a conviction of contracting without a license, a class A misdemeanor, in violation of Utah Code Ann. § 58–55–501 (1997). We affirm.

## BACKGROUND

¶ 2 Appellant builds and sells modular homes. Appellant is not a licensed contractor, and does not use licensed subcontractors, such as electricians or plumbers, in constructing the modular homes. The modular homes are inspected, however, by a state-licensed inspector to insure compliance with the general uniform building codes.

¶ 3 Appellant generally sells the modular homes assembled as a single unit, and transports them from his manufacturing facility to installation sites by using a "low-boy" trailer. Appellant never performs any site work, such as excavation, laying a foundation, or installing utilities, nor does he actually install or attach the modular buildings to a foundation. The buyers of the homes bear all responsibility for site work and installation of the modular buildings.

¶ 4 On December 9, 1997, the State of Utah filed an Information against Appellant alleging multiple counts of contracting without a license, a class A misdemeanor, in violation of Utah Code Ann. § 58–55–501 (1997). Following a bench trial on one count, the trial court entered a judgment of guilty, sentenced Appellant to a six-month term of incarceration, and imposed a one-thousand dollar fine. The trial court stayed execution of the sentence and placed Appellant on twelve months bench probation, which prohibited Appellant from constructing modular homes without first obtaining a license from the Utah Department of Professional Licensing. This appeal followed.

## ISSUES AND STANDARD OF REVIEW

¶ 5 First, we must determine whether the Construction Trades Licensing Act (Act) requires Appellant to obtain a license and whether Appellant qualifies for a licensing exemption under the Act. Second, we must determine whether Appellant's compliance with the Uniform Building Standards Act excuses any noncompliance with the Construction Trades Licensing Act. The issues involve statutory interpretation, which we review for correctness. *See State v. Fixel*, 945 P.2d 149, 151 (Utah Ct.App.1997).

## ANALYSIS

¶ 6 We begin our analysis by determining whether the Construction Trades Licensing Act requires Appellant to obtain a

license prior to constructing off-site modular homes. The Act requires:

> Any person engaged in the construction trades licensed under this chapter, or as a contractor regulated under this chapter, shall become licensed under this chapter before engaging in that trade or contracting activity in this state unless specifically exempted from licensure under Section 58–55–305.

Utah Code Ann. § 58–55–301(1)(a) (1997). Appellant asserts that his manufacturing of modular homes is not a construction trade, and thus he is not required to be licensed under the Act. The term "construction trade" is defined by the Act as follows:

> "Construction trade" means any trade or occupation involving construction, alteration, remodeling, repairing, wrecking or demolition, addition to, or improvement of any building, highway, road, railroad, dam, bridge, structure, excavation or other project, development, or improvement to other than personal property.

Utah Code Ann. § 58–55–102(5) (1997).

[3, 4]  ¶ 7 In construing these statutes, we follow the rules of statutory construction:

> A fundamental rule of statutory construction is that statutes are to be construed according to their plain language. Only if the language of a statute is ambiguous do we resort to other modes of construction. Furthermore, unambiguous language may not be interpreted to contradict its plain meaning. A corollary of this rule is that "a statutory term should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning of the term results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute."

*O'Keefe v. Utah State Retirement Bd.,* 956 P.2d 279, 281 (Utah 1998) (citations omitted). We find the language of section 58–55–102(5) to be unambiguous. Thus, we rely only upon the plain meaning of the statutory language, and do not resort to any other mode of construction.

¶ 8 The relevant section of the Act provides that the phrase " '[c]onstruction trade'

means any trade or occupation involving construction ... of any building." Utah Code Ann. § 58–55–102(5) (1997). Although determining what constitutes a building is a question of degree, to conclude that the modular home at issue is not a building would contradict the plain meaning of the word. *See John Wagner Assocs. v. Hercules, Inc.,* 797 P.2d 1123, 1128 (Utah Ct.App.1990). The modular unit is a completed home meant for human occupancy. Specifically, it comes complete with the following: assembled floor decking, exterior and interior walls, trusses, roof decking, rough electrical wiring, rough plumbing (including sinks, bathtubs, showers, and kitchen appliances), rough mechanical systems, shingles, insulation, sheet rock, cabinets, interior and exterior painting, interior doors, finishing electrical, finishing plumbing, finishing mechanical equipment, and finishing exterior siding.

¶ 9 In fact, Appellant concedes that he constructs buildings, and this concession is consistent with case law. In *Hercules,* we held that the plain meaning of the word "building," as used in Utah's Payment Bond Statute, includes modular office complexes. *See id.* at 1128–29. We follow *Hercules* to the extent that the plain meaning of the word "building," as used in the Act, includes the modular home at issue in this case. *See id.* at 1128–29. We conclude that because Appellant constructs buildings, he is involved in a "construction trade" and must be licensed under the Act. *See* Utah Code Ann. §§ 58–55–102(5), –301(1)(a) (1997).

¶ 10 Appellant next argues the trial court erred in not finding him exempt from the licensing requirement of the Act. *See id.* Specifically, Appellant asserts that he is exempt from the Act's licensing requirement by virtue of Utah Code Ann. § 58–55–305(6) (1997). However, the licensing exemption in section 58–55–305(6) applies only to "the sale or merchandising of personal property." *Id.* There is no dispute that in addition to selling and merchandising modular homes, Appellant also constructs them. No language in section 58–55–305(6) exempts the *construction* of buildings from the licensing requirement. *See id.* Our reading of section 58–55–305(6) is in harmony with Utah Code Ann.

§ 58–55–305(4) (1997), which clearly provides a limited licensing exemption for property owners' personal construction of noncommercial, personal-use buildings. Appellant's construction of modular homes does not fall within the plain meaning of "sale or merchandising"; therefore, the licensing exemption in section 58–55–305(6) does not apply.

▮ ¶ 11 Finally, Appellant contends that his compliance with the Uniform Building Standards Act excuses any noncompliance with the Construction Trades Licensing Act. We disagree. The legislative purposes for enacting the Construction Trades Licensing Act and the Uniform Building Standards Act are complementary. The legislative purpose for the Construction Trades Licensing Act is to protect the public from "inept and financially irresponsible builders." *American Rural Cellular v. Systems Comm. Corp.*, 890 P.2d 1035, 1040 (Utah Ct.App.1995). The legislative purpose for the Uniform Building Standards Act is to "ensure decent housing." *Wade v. Jobe*, 818 P.2d 1006, 1010 (Utah 1991). Both acts protect the public, but while one act deals with the provider, the other act deals with the product. The Construction Trades Licensing Act also covers financial responsibility of builders—an area of protection not covered by the Uniform Building Standards Act.

¶ 12 Both acts therefore work together in protecting the public. Just because a contractor is licensed under the Construction Trades Licensing Act, the contractor's work is not exempt from compliance with the applicable building codes. The same logic applies in reverse. Compliance with the applicable building codes is required but does not exempt noncompliance with the Construction Trades Licensing Act. Thus, we conclude that a modular home builder must comply with both the Construction Trades Licensing Act and the Uniform Building Standards Act.

## CONCLUSION

¶ 13 Appellant's construction of modular homes constitutes a construction trade that requires him to be licensed. Appellant does not qualify for an exemption from the licensing requirement. Appellant's compliance with the Uniform Building Standards Act does not excuse his noncompliance with the Construction Trades Licensing Act.

¶ 14 Accordingly, we affirm.

¶ 15 I CONCUR: JAMES Z. DAVIS, Judge.

THORNE, Judge (concurring in result):

¶ 16 I respectfully disagree with the reasoning relied upon by my colleagues. I do, however, concur in the result. My disagreement is based upon the following: (1) I do not believe that by virtue of *constructing* the modular home in question, defendant is precluded from relying upon the licensing exemption found in Utah Code Ann. § 58–55–305(6) (1997); and (2) I believe the modular homes constructed by defendant are personal property until affixed to real property, and thus may qualify as exempt under section 58–55–305(6). As such, in my view, defendant satisfies the first two requirements of section 58–55–305(6). Nevertheless, I would affirm defendant's conviction because he failed to show that he sold the modular home in question to a licensed contractor for installation.

¶ 17 I agree that, absent an exemption,[1] defendant must comply with the construction trade licensing requirements contained in Utah Code Ann. § 58–55–301(1)(a) (1997), when he *sells* modular homes. I believe section 58–55–305 is just such an exemption. In pertinent part, section 58–55–305(6) provides that the construction trade licensing requirements do not apply to

> a person engaged in the sale or merchandising of *personal property* that by its design or manufacture *may be attached, installed, or otherwise affixed to real property* who has contracted with a person, firm, or corporation licensed under this chapter to install, affix or attach that property.

*Id.* at § 58–55–305(6) (emphasis added).

¶ 18 Based on the language of section 58–55–305(6), the majority concludes

1. Section 58–55–301(1)(a), in relevant part, provides that "[a]ny person engaged in the construction trades ... shall become licensed ... unless specifically exempted from licensure under Section 58–55–305." Utah Code Ann. § 58–55–301(1)(a) (1997).

the licensing exemption in section 58–55–305(6) applies only to "the sale or merchandising of personal property." ... There is no dispute that in addition to selling and merchandising modular homes, [defendant] also constructs them. No language in section 58–55–305(6) exempts the *construction* of buildings from the licensing requirements.

(Emphasis in original.)

¶ 19 The rules of statutory interpretation mandate that we look "first to the plain language of the statute ... and to assume[ ] that each term was used advisedly by the [L]egislature." *Biddle v. Washington Terrace City,* 1999 UT 110,¶ 14, 993 P.2d 875. By virtue of specific inclusion in the construction trades licensing chapter, persons engaged in these "trades" are bound by the licensing requirements of the code unless exempted. It makes no sense to interpret the exemption provision in section 58–55–305(6) as exempting only *salespersons* from the licensing requirements, when section 58–55–301 does not require such persons be licensed in the first place. Furthermore, precluding those persons the chapter *actually requires* to be licensed from using the section 58–55–305(6) exemption flies in the face of common sense and renders the statutory exemption nugatory. Accordingly, I would conclude that being a "constructor/builder" does not *preclude* a person from utilizing the exemption.

¶ 20 To benefit from the exemption, defendant's modular homes must first qualify as personal property. *See* Utah Code Ann. § 58–55–305(6) (stating "a person engaged in the sale or merchandising of personal property"). Accordingly, we must decide whether defendant's modular homes are personal property or real property. The majority opinion, I believe, fails to adequately resolve this question.

¶ 21 The majority relies upon *John Wagner Assocs. v. Hercules, Inc.,* 797 P.2d 1123, 1127–30 (Utah Ct.App.1990), concluding that

In *Hercules,* we held that the plain meaning of the word "building," as used in Utah's Payment Bond Statute, includes modular office complexes.... We follow *Hercules* to the extent that the plain mean-

ing of the word "building," as used in [Utah Code Ann. § 58–55–301(a) ], includes the modular home at issue in this case.

Indeed, in *Hercules* we stated that " '[w]hat is a building must always be a question of degree; but ordinarily the word refers to a structure enclosing a space within walls and roof.' " *Hercules,* 797 P.2d at 1128 (quoting 12 C.J.S. *Building* (1980)).

¶ 22 Clearly, the modular home at issue here is a building. However, the issue in *Hercules* was whether modular buildings constructed *on-site* and secured to the land by gravity constituted realty. There, we addressed this issue, stating " '[i]t is settled ... that a building need not be physically anchored to the land to be considered realty. It may be found to be a fixture though it is secured to the realty by force of gravity alone.' " *Id.* (quoting *Rinaldi v. Goller,* 48 Cal.2d 276, 309 P.2d 451, 453 (1957)). Obviously, *Hercules* is distinguishable, because here defendant's modular home has neither been *transported* to its site nor has it been attached, anchored by gravity, or otherwise affixed to the land.

¶ 23 Furthermore, both case law and legal treatises have uniformly identified modular homes as personal property because these units are " 'movable at the time of identification to the contract for sale' and hence are 'goods.' " *Burnham v. Mark IV Homes, Inc.,* 387 Mass. 575, 441 N.E.2d 1027, 1031 (1982) (quoting *Fuqua Homes, Inc. v. Evanston Bldg. & Loan Co.,* 52 Ohio App.2d 399, 370 N.E.2d 780 (1977)); *see, e.g., Little v. Grizzly Mfg.,* 195 Mont. 419, 636 P.2d 839, 842 (1981) (citing and agreeing with *Stephenson v. Frazier,* 399 N.E.2d 794 (Ind.Ct.App. 1980) and *Cates v. Morgan Portable Bldg. Corp.,* 591 F.2d 17 (7th Cir.1979) that modular homes are goods); *see also* 67 Am.Jur.2d *Sales* § 61 (1999) ("Prefabricated modular homes are also "goods" when movable at time of identification to the contract for sale. When a modular home *is already situated on the lot* at the time of sale the transaction is one in real estate...." (Citations omitted.)); Black's Law Dictionary 1218 (6th ed.1990) (defining real property as "[l]and, and gener-

ally whatever is erected or growing upon or affixed to land").

¶ 24 In the present matter, defendant's modular home was not yet affixed to land, and hence, was movable, making it "goods" or personal property. *See Burnham,* 441 N.E.2d at 1031. Accordingly, defendant's building satisfies the "personal property" prong of section 58–55–305(6), until such time as it is "affixed."

¶ 25 Finally, to qualify for the section 58–55–305(6) exemption, defendant is required to "contract[ ] with a person, firm, or corporation licensed under this chapter to install, affix, or attach that property." Utah Code Ann. § 58–55–305(6) (1997). My review of the parties' stipulated facts, which were presented to the trial court, as well as their responses concerning this subject during oral argument, reveal that the question of whether the recipient of defendant's modular home was licensed under section 55–58–301 was not answered.

¶ 26 A person claiming a statutory exemption has the burden of producing sufficient facts to qualify for the exemption. *See Parson Asphalt Prods., Inc. v. Utah State Tax Comm'n,* 617 P.2d 397, 398 (Utah 1980) (stating "statutes which provide for exemptions should be strictly construed and one who so claims has the burden of showing his entitlement to the exemption" (footnotes omitted)). Had the record revealed that defendant had transferred the personal property to a licensed individual, firm, or company, as required by section 58–55–305(6), I would vacate the conviction. But, in light of the absence of sufficient facts demonstrating that defendant contracted to sell the modular home to a licensed person or firm, I concur in the majority's result.