2014 UT App 114

**STATE of Utah, Plaintiff and Appellee,**

v.

**Robert Douglas ROBINSON, Defendant and Appellant.**

No. 20120403–CA.

Court of Appeals of Utah.

May 22, 2014.

Joel J. Kittrell, Salt Lake City, for Appellant.

Sean D. Reyes and Jeanne B. Inouye, Salt Lake City, for Appellee.

Judge J. FREDERIC VOROS JR. authored this Opinion, in which Judges GREGORY K. ORME and STEPHEN L. ROTH concurred.

## Opinion

VOROS, Judge:

¶1 After convicted sex offender Robert Douglas Robinson admitted to multiple probation violations, the trial court revoked his probation and imposed his original sentence. Robinson contends that the trial court abused its discretion by revoking probation without holding an evidentiary hearing or finding that his violations were willful. We affirm.

## BACKGROUND

¶2 The State of Utah originally charged Robinson with forcible sexual abuse, two counts of sexual battery, making a terroristic threat, and disorderly conduct.[1] After he pleaded no contest to all charges, the trial court sentenced Robinson to an indeterminate prison term not exceeding five years on the conviction for forcible sexual abuse, one year on the conviction for sexual battery, 180 days on the conviction for making a terroristic threat, and 90 days on the conviction for disorderly conduct. The court suspended Robinson's sentence and placed him on probation for 36 months.

¶3 Three months later, the State alleged that Robinson had committed five probation violations, including not fully complying with sex-offender- and DNA-registration requirements and not reporting as directed. The trial court issued a warrant for Robinson's arrest. He was apprehended, but because his probation officer failed to appear at the scheduled evidentiary hearing the court struck the order to show cause. Five months later, the State alleged that Robinson had committed seven probation violations, again including not complying with sex-offender- and DNA-registration requirements and not reporting as directed. The trial court again issued a warrant for Robinson's arrest. Two months later Adult Probation and Parole (AP & P) filed a progress report stating that Robinson had not made contact with AP & P for eight months and that his whereabouts were unknown.

¶4 Robinson was apprehended, and the trial court held a revocation hearing. Robinson waived an evidentiary hearing and admitted to three allegations. His counsel explained that predecessor counsel had led Robinson to believe that he was no longer on probation but that Robinson now knew that he needed to "strictly comply with every condition of probation." The prosecution challenged the credibility of Robinson's explanation. The trial court found a willful violation and expressed skepticism "that there would be this much confusion." Nevertheless, the court revoked and reinstated probation, adding that "any further failure to completely follow the requirements will result in the original sentence." Because Robinson told the court that he lived in Cedar City, the court instructed him to report to the Cedar City AP & P office upon his release.

¶5 Robinson reported, but to the Salt Lake City AP & P office rather than to the Cedar City AP & P office. AP & P filed a

1. The State dismissed one count of sexual battery.

progress report alleging, among other violations, that Robinson had not reported to the Cedar City office as required, that he had not fully complied with the registration requirements, and that his whereabouts were again unknown.

¶ 6 Robinson was located, and the trial court held another revocation hearing. Appearing with the same counsel who had represented him in the earlier revocation hearing, Robinson admitted the allegations in the violation report. He did not request an evidentiary hearing or expressly deny that his violations were willful. However, his counsel explained that Robinson "was under the belief that with his appeal going forward with the Court of Appeals, that the sentence essentially was stayed," but asserted, "Mr. Robinson now knows today that that's not the case." Robinson added, "It was my understanding it was under appeal, and it was just a big misunderstanding. My apologies."

## ISSUE AND STANDARD OF REVIEW

■ ¶ 7 Robinson contends that the trial court abused its discretion by revoking his probation without holding an evidentiary hearing or entering a finding that his violations were willful. "The decision to grant, modify, or revoke probation is in the discretion of the trial court." *State v. Jameson*, 800 P.2d 798, 804 (Utah 1990). "Therefore, we view the evidence of a probation violation in a light most favorable to the trial court's findings and substitute our own judgment only if the evidence is so deficient as to render the court's action an abuse of discretion." *State v. Maestas*, 2000 UT App 22, ¶ 12, 997 P.2d 314.

## ANALYSIS

¶ 8 Robinson contends that the trial court abused its discretion by revoking his probation without holding an evidentiary hearing

or finding that his violations were willful. The State responds that this court should not review Robinson's claims, because he failed to preserve them in the trial court. The State also maintains that even had Robinson preserved his claims, the trial court held "a hearing that presented [Robinson] with an opportunity to deny the allegations" and made an "implied finding of willfulness." Thus, the State concludes, the trial court did not abuse its discretion in revoking Robinson's probation.

### I. Evidentiary Hearing

■ ¶ 9 To preserve an issue for appeal, a party must present it "to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted).

■ ¶ 10 In Robinson's opening brief, he argues that he preserved his claims by reciting them in his docketing statement. However, merely identifying a claim in a docketing statement does not preserve it for appeal. The appellant files the docketing statement in the appellate court. *See* Utah R.App. P. 9. The docketing statement therefore does not present the issue "to the *trial court* in such a way that the *trial court* has an opportunity to rule on that issue." *438 Main St.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted) (emphasis added). Faced with a preservation challenge in the State's brief, Robinson argued in his reply brief that he did preserve his claims in the trial court and that in any event we should review his claims under the plain error doctrine.

■ ¶ 11 We do not agree that Robinson preserved his challenge to the lack of an evidentiary hearing.[2] Robinson argues that

---

2. "Probation may not be revoked except upon a hearing in court and a finding that the conditions of probation have been violated." Utah Code Ann. § 77–18–1(12)(a)(ii) (LexisNexis Supp. 2011). "At the hearing, the defendant shall admit or deny the allegations of the affidavit." *Id.* § 77–18–1(12)(d)(i). "If the defendant denies the allegations of the affidavit, the prosecuting attorney shall present evidence on the allegations."

*Id.* § 77–18–1(12)(d)(ii). If an evidentiary hearing is held, "[t]he defendant may call witnesses, appear and speak in the defendant's own behalf, and present evidence." *Id.* § 77–18–1(12)(d)(iv). Thus, "probationers may elect either to have a hearing complete with all of the statutory protections" or "may waive the right to a hearing, thereby foregoing the procedural safeguards

while neither he nor his counsel "explicitly requested an evidentiary hearing on the allegations," Robinson asked the trial court "if he could give an explanation as to the 'misunderstandings' that led to his technical probation violations." The court granted the request. An appellant who " 'has received what he asked for' " from the trial court " 'cannot be heard to complain on appeal.' " *See State v. Larrabee*, 2013 UT 70, ¶ 26 n. 25, 321 P.3d 1136 (quoting Robert J. Martineau et al., *Appellate Practice & Procedure, Cases & Materials* 101 (2d ed. 2005)) Accordingly, this request in the revocation hearing did not preserve Robinson's claims. Neither Robinson nor his counsel sought anything from the trial court that it did not grant except reinstatement of probation.

■■■ ¶ 12 Robinson's plain error claim comes too late. If an appellant fails to preserve an issue in the trial court, the plain error exception allows "the appellate court to balance the need for procedural regularity with the demands of fairness." *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (citation and internal quotation marks omitted). "To demonstrate plain error, a defendant must establish that (i)[a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful . . . ." *Id.* (alteration in original) (citation and internal quotation marks omitted). However, "[w]e will not consider matters raised for the first time in the reply brief." *Coleman ex rel. Schefski v. Stevens*, 2000 UT 98, ¶ 9, 17 P.3d 1122. This rule applies to claims of plain error. *Id.* Therefore, a party seeking appellate review of an unpreserved issue must "articulate the justification for review in the party's opening brief." *State v. Weaver*, 2005 UT 49, ¶ 19, 122 P.3d 566. Thus, a plain error argument presented for the first time in a reply brief is beyond our reach.

## II. Willfulness

■■■ ¶ 13 Robinson next contends that the trial court abused its discretion by revoking probation without first finding that his violation was willful. The State again argues that Robinson failed to preserve this claim.

■■■ ¶ 14 Robinson preserved his willfulness claim for review. The State asks that we accept the trial court's colloquy with Robinson as an "implied finding of willfulness," *see supra* ¶ 8, yet seeks to cordon off Robinson's willfulness claim from our review on the ground that Robinson failed to identify his claim with precision. Our case law does allow us to consider an implicit finding of willfulness by the trial court. *See, e.g., State v. Brady*, 2013 UT App 102, ¶ 7, 300 P.3d 778. We grant Robinson similar leeway in preserving his claim that his violations were not willful. Robinson's preservation of this claim does not "turn on the use of magic words or phrases." *See In re Baby Girl T.*, 2012 UT 78, ¶ 38, 298 P.3d 1251. As explained above, so long as he presented the issue "in such a way that the trial court ha[d] an opportunity to rule on that issue," he preserved the issue for appellate review. *See 438 Main St.*, 2004 UT 72, ¶ 51, 99 P.3d 801. We conclude that the trial court both had an opportunity to rule on the issue and did so.

¶ 15 Robinson arrived at his final revocation hearing with two goals: he sought "to admit the allegations in the order to show cause affidavit" and "to give an explanation [for his violations] to the Court." Robinson admitted that he had failed to establish a residence of record, failed to report to the Cedar City AP & P, failed to abide by the terms of his zero-tolerance probation program, and failed to fully comply with the sex-offender- and DNA-registration requirements. Robinson then explained that he

guaranteed in the statute." *State v. Martin*, 1999 UT App 62, ¶ 9, 976 P.2d 1224.

Robinson appeared at the revocation hearing with counsel. His counsel stated that Robinson "intends to admit the allegations in the order to show cause affidavit, and would like to give an explanation to the Court." The trial court then asked whether Robinson admitted each of the probation violations. Robinson stated that he did.

The statute requires the prosecutor to present evidence of the allegations "[i]f the defendant denies the allegations in the affidavit." Utah Code Ann. § 77–18–1(12)(d)(ii). By admitting the allegations, Robinson obviated the need for the prosecutor to present evidence of the alleged violations. Accordingly, even had Robinson preserved his challenge to the lack of an evidentiary hearing, the trial court did not exceed its discretion by not putting the State to its proof.

misunderstood the terms of his probation and that he had been unable to travel to Cedar City to report. Though he never explicitly stated that his probation violations were not willful, his explanation implied that his violations stemmed from confusion and from financial limitations, not from willfulness. In his view, his failure to report upon release "was just a big misunderstanding." This explanation offered the trial court an "opportunity to rule" on the question of willfulness. *Id.* Accordingly, Robinson preserved this claim.

¶ 16 We thus consider whether the trial court abused its discretion in revoking Robinson's probation without first finding that he had willfully violated the terms of his probation. "[F]or a trial court to revoke probation based on a probation violation, the court must determine by a preponderance of the evidence that the violation was willful." *State v. Peterson*, 869 P.2d 989, 991 (Utah Ct.App.1994). "[A] finding of willfulness merely requires a finding that the probationer did not make *bona fide* efforts to meet the conditions of his probation." *Id.* (citation and internal quotation marks omitted) Furthermore, the trial court's finding of willfulness may be implicit rather than explicit. *Brady*, 2013 UT App 102, ¶ 7, 300 P.3d 778.

¶ 17 Robinson argues that the explanations he offered to the trial court demonstrate that his violations were not willful. He claimed that he "was informed by private counsel that his sentence was essentially stayed until the Court of Appeals addressed his appeal" and that he "believed that it was not necessary to continue checking in with AP & P."

¶ 18 The trial court did not credit Robinson's explanations. Robinson had claimed confusion before. At his first order to show cause hearing, Robinson, represented by the same counsel, claimed that "he was under the impression that the terms of probation were not yet to be applied." Although dubious, the judge in that hearing reinstated probation, warning, "Mr. Robinson will have another 30 days in jail; and upon his release he is to report to AP & P within 48 hours. If that does not occur, we're going to be back in court.... [And] any further failure to completely follow the requirements will result in the original sentence." Robinson responded, "Absolutely, ma'am." Furthermore, Robinson's claims of confusion contradicted record statements of his aunt, and the judge was "more inclined to believe what she ha[d] to say" than to believe Robinson.[3]

¶ 19 Having discussed the matter at some length with Robinson, the judge concluded, "It seems like you report when you want to, not when you're told to." The trial court thus implicitly yet unmistakably found that Robinson's violations were willful. *See Peterson*, 869 P.2d at 991. We "view the evidence of a probation violation in a light most favorable to the trial court's findings" and will "substitute our own judgment only if the evidence is so deficient as to render the court's action an abuse of discretion." *State v. Maestas*, 2000 UT App 22, ¶ 12, 997 P.2d 314. The record evidence here, viewed in the light most favorable to the trial court's findings, supports the trial court's implicit finding of willfulness.

### CONCLUSION

¶ 20 Robinson has not demonstrated that the trial court abused its discretion in revoking his probation. The order of the trial court is accordingly affirmed.

---

3. Robinson's aunt, who lived near Cedar City, reported that he came to her house to pick up a van, then drove it back to Salt Lake City. Robinson denied going to her house and argued that his aunt was out "to get him in trouble."