**2020 UT App 169**

## THE UTAH COURT OF APPEALS

R4 CONSTRUCTORS LLC,
Appellee,
*v.*
INBALANCE YOGA CORPORATION AND JENNIFER SCHNABEL,
Appellants.

Opinion
No. 20190685-CA
Filed December 24, 2020

Fourth District Court, Provo Department
The Honorable Christine S. Johnson
No. 170401436

Justin D. Heideman and Justin R. Elswick, Attorneys
for Appellants

Cody W. Wilson and Andrew Berne, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

MORTENSEN, Judge:

¶1    InBalance Yoga Corporation and Jennifer Schnabel (collectively, InBalance) failed to timely designate any experts, and the district court denied a motion to extend the lapsed deadline. Subsequently, the district court granted a motion by R4 Constructors LLC (R4) for summary judgment—both on its own claims for affirmative relief as well as on InBalance's counterclaims—and denied InBalance's cross-motion for summary judgment on R4's claims. The district court's grant of R4's motion rested, in part, on the conclusion that InBalance failed to disclose a computation of damages. The denial of InBalance's cross-motion was premised on the district court's

conclusion that InBalance waived a licensure defense. InBalance appeals these rulings. We affirm the district court's rulings in part but vacate the entry of summary judgment granting R4's claims for affirmative relief as well as the final judgment in R4's favor, and remand for further proceedings.

## BACKGROUND

¶2 In December 2015, InBalance contracted with R4 for the construction of a yoga studio. R4 subsequently began construction on the studio, and InBalance paid R4 according to the first invoice. Thereafter, disputes arose with regard to the work on the studio, and InBalance refused to pay additional amounts due. Eventually, R4 finished working on the studio, and a certificate of occupancy was issued.

¶3 R4 filed a complaint against InBalance seeking amounts owed under the contract. InBalance filed a counterclaim stemming from alleged defects in the construction and an answer asserting twenty-nine affirmative defenses, not including R4's lack of licensure. During discovery, R4 propounded an interrogatory requesting "a detailed computation" of the damages alleged in InBalance's counterclaim. In response, InBalance stated it claimed no less than $185,723.79 "based upon the original costs of labor and fixtures to perform the work as identified in the R4 contract as well as the cost of correct and functioning fixtures and the cost of repair for the items installed and/or constructed."

¶4 The litigation continued, and the deadline to disclose expert witnesses passed without InBalance having disclosed any expert witness. Several weeks after the disclosure deadline, InBalance filed a motion to extend the expert disclosure deadline and sought leave to disclose a construction expert. The court held a hearing, at the conclusion of which it denied the motion and articulated the findings underlying its decision. The court subsequently entered a written order denying the motion.

¶5    Thereafter, R4 filed a motion for summary judgment on its affirmative claims and seeking dismissal of InBalance's counterclaims, in part because InBalance failed to timely disclose an expert witness necessary to prove the alleged construction defects. InBalance filed its own motion for summary judgment for the limited purpose of dismissing R4's claims as barred by statute due to R4's lack of a contractor's license at the time the parties made the contract. The district court granted R4's motion, denied InBalance's cross-motion, dismissed InBalance's counterclaims, and entered judgment, including attorney fees, for R4 on its affirmative claims.

¶6    InBalance appeals.


ISSUES AND STANDARDS OF REVIEW

¶7    InBalance raises three issues on appeal. First, InBalance asserts that the district court erred in denying its motion to extend the expert disclosure deadline. We review a court's decision on extending the time for discovery for an abuse of discretion, reversing only "if there is no reasonable basis for the district court's decision." *Berger v. Ogden Reg'l Med. Center*, 2020 UT App 85, ¶ 15, 469 P.3d 1127 (cleaned up).

¶8    Second, InBalance argues that the district court erred by denying its motion for summary judgment and by granting R4's motion for summary judgment. "We review the district court's ultimate grant or denial of summary judgment for correctness. We give no deference to the district court's legal conclusions and consider whether the court correctly decided that no genuine issue of material fact existed." *Far West Bank v. Robertson*, 2017 UT App 213, ¶ 15, 406 P.3d 1134 (cleaned up).

¶9    Third, InBalance asserts it is entitled to attorney fees and costs on appeal. "Whether attorney fees are recoverable in an action is a question of law." *Tronson v. Eagar*, 2019 UT App 212, ¶ 15, 457 P.3d 407 (cleaned up). "When a party who received attorney fees below prevails on appeal, the party is also entitled

to fees reasonably incurred on appeal." *Telegraph Tower LLC v. Century Mortgage LLC*, 2016 UT App 102, ¶ 52, 376 P.3d 333 (cleaned up). And we determine the award of costs on appeal in the first instance. *See* Utah R. App. P. 34(a).

## ANALYSIS

### I. Motion to Extend Time for Expert Disclosure

¶10 InBalance contends that the district court erred by denying its motion to extend time for expert disclosure, asserting it established excusable neglect under rule 6(b)(1)(B) of the Utah Rules of Civil Procedure. InBalance suggests the court's order warrants reversal given the lack of findings to support the court's bare written order. However, in the reply brief, InBalance acknowledges that the court made findings during the hearing on the motion and further admits that it failed to include a transcript of the hearing in the record on appeal.

¶11 Under the Utah Rules of Appellate Procedure, "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." Utah R. App. P. 11(e)(2); *see id.* R. 11(c). This is so that an appellant can meet the obligation to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." *Id.* R. 24(a)(8).

¶12 In the absence of the hearing transcript containing the district court's findings, InBalance encourages this court to reconsider the issue essentially de novo, asserting that "the allegations and arguments relied upon by the parties *are* in the record." But such an undertaking is inappropriate under our standard of review for abuse of discretion. Because InBalance has not provided this court with the tools necessary to determine whether the district court had a reasonable basis for its decision

to deny the motion, its "claim of error is merely an unsupported, unilateral allegation which we cannot resolve." *Horton v. Gem State Mutual of Utah*, 794 P.2d 847, 849 (Utah Ct. App. 1990) (cleaned up); *see also Lamar v. Lamar*, 2012 UT App 326, ¶ 5, 292 P.3d 86 (per curiam) (holding appellant could not demonstrate district court abused its discretion in its alimony award because appellant had not included a transcript of the hearing containing court's findings on appellee's financial need and earning capacity). Without the hearing transcript, we presume that the court's findings provided it with a reasonable basis for its decision, *see Hoffer v. Hoffer*, 2013 UT App 203, ¶ 3, 309 P.3d 277 (per curium) ("In the absence of the transcript on appeal, this court presumes the regularity of the proceedings below."), and we therefore cannot conclude that the court abused its discretion in denying InBalance's motion to extend the time for expert disclosure.

## II. Cross-Motions for Summary Judgment

¶13 InBalance next argues that the district court erred by denying its motion for summary judgment, in which it sought dismissal of R4's claims due to R4's lack of licensure, and by granting R4's motion for summary judgment on its own claims as well as on InBalance's counterclaims. We address each contention in turn.

### A. InBalance's Motion for Summary Judgment

¶14 InBalance contends the district court erred in denying its cross-motion for summary judgment seeking to dismiss R4's claims for R4's failure to comply with the requirements of Utah Code section 58-55-604. The district court denied InBalance's motion because it concluded that InBalance's argument constituted an affirmative defense that was waived when InBalance did not raise it in answer to R4's complaint. The court's conclusion that InBalance waived the defense allowed the court to enter judgment for R4—otherwise R4 would have had the burden of overcoming the restrictions of section 58-55-

604. We hold that the district court incorrectly denied InBalance's motion and incorrectly granted summary judgment in favor of R4 on its affirmative claims.[1]

¶15 Section 58-55-604 provides,

> A contractor . . . may not . . . commence or maintain any action in any court of the state for collection of compensation for performing any act for which a license is required by this chapter without alleging and proving that the licensed contractor . . . was appropriately licensed when the contract sued upon was entered into, and when the alleged cause of action arose.

Utah Code Ann. § 58-55-604 (LexisNexis 2016). Before the district court, InBalance presented evidence that R4 was unlicensed at the time it entered into the contract with InBalance, although R4 obtained its license a few weeks later while work under the contract was still occurring.

¶16 On appeal, InBalance contends that the licensure statute deprives a claimant of the legal capacity to sue unless it was

---

1. We note some conflation in the record between the defense at hand of "licensure" and the defense of "license" that is expressly identified in rule 8(c) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 8(c). "'License' as used in [rule 8(c)] is essentially synonymous with 'consent.' If the defending party contends he had the consent or license of the complaining party to do the acts complained of, he must assert that defense as Rule 8(c) provides." *Lignell v. Berg*, 593 P.2d 800, 805 (Utah 1979) (cleaned up). By contrast, licensure speaks to the statutory prerequisite for a party to be licensed as qualified to perform certain activities. *See, e.g.*, Utah Code Ann. § 58-55-301 (LexisNexis Supp. 2020); *id.* § 58-55-604 (2016); *id.* § 61-2g-301 (Supp. 2020); *id.* § 61-2g-404 (2018).

licensed, as specified, and further claims that the issue constitutes both a prerequisite to commencing an action and a substantive requirement for pleading and proving a claim, and it can therefore be raised any time before or during trial. In contrast, R4 asserts that the district court was correct to conclude that non-compliance with the statute is an affirmative defense and is waivable. The question as to whether the requirements of section 58-55-604 constitute an affirmative defense or a substantive requirement of pleading and proof is before us as a matter of first impression. Ultimately, for the reasons that follow, we hold that the district court erred in concluding that non-compliance was a waivable affirmative defense.

¶17    We recognize that our supreme court has discussed the nonrecovery provision of section 58-55-604 and alluded to the capacity to sue without reaching the issue at hand. *See Lignell v. Berg*, 593 P.2d 800, 804–05 (Utah 1979). We have previously held that "a party has capacity [to sue] when it has the legal authority to act." *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228, ¶ 51, 391 P.3d 222 (cleaned up). In discussing capacity to sue under other statutes, we have generally concluded that "lack of capacity is an affirmative defense, which may be waived." *Id.* ¶ 53 (cleaned up) (discussing the Assumed Name Statute in Utah Code section 42-2-10 (2014)). And this is the line of cases on which the district court appears to have relied. However, we do not think the nonrecovery provision here presents an issue of mere lack of legal capacity because it differs from other statutes which affect legal capacity to sue.

¶18    For example, the Assumed Name Statute provides,

> Any person who carries on, conducts, or transacts business under an assumed name without having complied with the provisions of this chapter, and until the provisions of this chapter are complied with: shall not sue, prosecute, or maintain any action, suit, counterclaim, cross complaint, or proceeding in any of the courts of this state . . . .

Utah Code Ann. § 42-2-10 (LexisNexis 2014). Notably, that statute deprives a litigant of legal capacity to participate in a case under the assumed name only until the litigant complies with the provisions of the chapter or otherwise cures the defect. *See Graham v. Davis County Solid Waste Mgmt. & Energy Recovery Special Service Dist.*, 1999 UT App 136, ¶¶ 15–16, 979 P.2d 363 (on curing deficiency); *see also Estate of Faucheaux v. City of Provo*, 2019 UT 41, ¶ 35, 449 P.3d 112 (holding that a lack of legal capacity to sue, owing to a party not in interest asserting the claim, can be cured by substitution of parties). That statute also makes no mention of a claimant needing to affirmatively "allege and prove" that it is not operating under an assumed name. *Compare* Utah Code Ann. § 58-55-604, *with id.* § 42-2-10.

¶19    In contrast, looking at the plain language of section 58-55-604, the nonrecovery provision at issue here prevents a claimant from recovering if it does not allege and prove that it was licensed at both the time of contracting and at the time the cause of action arose. *See id.* § 58-55-604; *see also George v. Oren Ltd. & Assocs.*, 672 P.2d 732, 734 (Utah 1983) (observing claimant became relicensed but reversing with order to dismiss the claim for lack of licensure).[2] The Assumed Name Statute contains no similar affirmative requirement. The requirement to allege and prove licensure here affects both a claimant's pleading obligations and the evidence it must present to prevail on a cause of action and not merely its legal authority to act. The nonrecovery provision thus potentially acts as a bar to recovery for unlicensed claimants. *See A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.*, 1999 UT App 87, ¶ 14, 977 P.2d 518 (addressing section 58-55-604 as a "statutory bar").

---

2. We recognize that the requirement of section 58-55-604 is somewhat in tension with rule 9 of the Utah Rules of Civil Procedure: "Except when required to show that the court has jurisdiction, a pleading need not allege . . . a party's capacity to sue or be sued." Utah R. Civ. P. 9(a)(1)(A).

¶20     At the same time, the nonrecovery provision should not be understood in isolation. We have previously recognized that the nonrecovery provision embodies a general common law rule, and we therefore interpret it consistent "with the case law which has developed under the general rule." *Pacific Chromalox Div. v. Irey*, 787 P.2d 1319, 1326 (Utah Ct. App. 1990); *see, e.g., Smith v. American Packing & Provision Co.*, 130 P.2d 951, 959 (Utah 1942) (articulating general rule prior to codification). As such, our understanding of the provision is informed by certain exceptions to nonrecovery that arose under the common law. *See Whipple Plumbing*, 1999 UT App 87, ¶ 14 ("We have recognized that the statutory bar does not preclude the application of the previous common law exceptions to the general rule of non-recovery." (cleaned up)); *Pacific Chromalox*, 787 P.2d at 1326 ("The general rule is not applied unconditionally, but only under circumstances in which the party from whom the contractor seeks to recover is in the class the legislature intended to protect." (cleaned up)); *see also American Rural Cellular, Inc. v. Systems Commc'n Corp.*, 890 P.2d 1035, 1040–41 (Utah Ct. App. 1995) (discussing cases providing exceptions to the rule of nonrecovery). And when an exception applies, the nonrecovery provision does not bar the claim. *See Whipple Plumbing*, 1999 UT App 87, ¶ 14 ("[I]f the court concludes the claim falls within the purview of section 58-55-604, but the common law exceptions apply, then the statutory bar will not preclude suit. However, if the court determines section 58-55-604 applies but the common law exceptions are inapplicable, then section 58-55-604 absolutely bars the action."); *American Rural Cellular*, 890 P.2d at 1036 ("Because [the counterclaimant] has not alleged or proved that it was licensed at the relevant times, [the statutes] bar its counterclaim unless (1) [it] was not engaged as a contractor within the statutory definition, or (2) [it] qualifies for a statutory or common law exception to the statutory bar."). Thus, unlicensed claimants can sue for recovery under Utah law, even if they are out of compliance with section 58-55-604, so long as they can demonstrate that one of the common law exceptions applies.

¶21    In this case, R4 did not allege that it was licensed at the time of contracting as required by section 58-55-604, and even now does not claim to have been licensed at the time it entered the contract with InBalance. Rather, R4 asserts that even if it is out of compliance with the statute, it may still recover under various common law exceptions. Its chief argument, in opposition to InBalance's motion for summary judgment and on appeal, is that invocation of the nonrecovery provision of section 58-55-604 constitutes an affirmative defense which InBalance waived by not raising it in answer to R4's complaint; and this was the basis on which the district court ruled. However, we cannot endorse this reading and application of the statute.

¶22    As stated, the issue of whether compliance with section 58-55-604 constitutes a waivable affirmative defense is one of first impression in Utah. But this is not so in other states, and there exists a split of authority on the issue. In discussing similarly phrased statutes, some jurisdictions indeed have recognized licensure as an affirmative defense that may be waived if a party fails to timely assert it. *See Smith v. Pinnamaneni*, 254 P.3d 409, 412 (Ariz. Ct. App. 2011) ("[A] contractor's lack of licensure is an affirmative defense subject to waiver."); *Albers v. Fitschen*, 143 N.W.2d 841, 843 (Minn. 1966) (concluding the statutory condition "regulates or limits the enforcement of a right and provides a defense which may be waived"). Arizona courts have treated licensure as an affirmative defense because "contracts with unlicensed contractors are not per se unenforceable and unlicensed contractors can seek compensation . . . if they show substantial compliance with licensing requirements, [and therefore] the burden is on the opposing party to affirmatively raise the defense of lack of licensure." *Smith*, 254 P.3d at 413. Similarly, Minnesota courts reasoned that because the licensure precondition relates to the remedy of enforcement, "[t]he provision requiring the allegation and proof of the existence of a license is more in the nature of a statute of limitations," and a licensure deficiency appearing on the face of the complaint is therefore waivable. *Albers*, 143 N.W.2d at 843.

¶23    In contrast, other jurisdictions with similarly phrased statutes do not treat licensure as a waivable affirmative defense. *See Reynolds v. College Park Corp.*, 234 N.W.2d 507, 508 (Mich. Ct. App. 1975) ("[O]bjection to lack of an opposing party's license . . . would not be waived if not asserted in defendant's responsive pleading."); *American Builders Supply Corp. v. Enchanted Builders, Inc.*, 1972-NMSC-012, ¶ 5, 494 P.2d 165 ("[S]ince a failure to allege the license is fatal to the complaint, it may be asserted at any time that the complaint fails to state a claim on which relief can be granted."). The courts of those states treat licensure as part of the cause of action that the claimant must affirmatively prove and permit a claim lacking the required licensure allegation to be challenged as either a failure of proof or a failure to state a claim for which relief can be granted.[3] *See Reynolds*, 234 N.W.2d at 508; *American Builders*, 1972-NMSC-012, ¶ 5. This approach furthers the intention for the law "to prohibit the bringing of suit by those unlicensed contractors who were acting illegally not to bar the remedy of lawful contractors because of a technical error in their pleadings," *Daughtrey v. Carpenter*, 1970-NMSC-151, ¶ 15, 477 P.2d 807, and gives meaning to the statutory language requiring claimants, in order to prevail in a lawsuit, to affirmatively "alleg[e] and prov[e]" that they were licensed at the relevant times, *see* Utah Code Ann. § 58-55-604.

¶24    A review of Utah caselaw reveals that under the common law our courts used the latter approach, treating licensure as part of the cause of action. In *Olsen v. Reese*, 200 P.2d 733 (Utah 1948), our supreme court held that "to state a cause of action" pursuant to the then common law rule—requiring that a "person must allege and prove facts, which show he was licensed" before recovering—"it was necessary for [a] plaintiff to allege he was a licensed contractor." *Id.* at 736. And our courts continued to treat

---

3. We note that InBalance did expressly preserve the defense that R4's claim failed to state a claim for which relief could be granted.

licensure as an element of the cause of action even after the law was codified. *See George*, 672 P.2d at 734 (reversing entry of judgment for plaintiff after trial and remanding for dismissal of plaintiff's complaint because "plaintiff was not licensed to engage in the business of a contractor"); *Motivated Mgmt. Int'l v. Finney*, 604 P.2d 467, 467 (Utah 1979) (reviewing dismissal of case "for failure to state a claim because plaintiff performed the work of a contractor without being licensed as a contractor"); *see also Meridian Corp. v. McGlynn/Garmaker Co.*, 567 P.2d 1110, 1111 (Utah 1977) (reaffirming the holding of *Olsen v. Reese* after codification of the rule of nonrecovery). Accordingly, "objection to lack of an opposing party's license would come under . . . failure to state a claim upon which relief can be granted" and would not be treated as an affirmative defense. *Reynolds*, 234 N.W.2d at 508; *see also Prince v. Bear River Mutual Ins. Co.*, 2002 UT 68, ¶ 31, 56 P.3d 524 ("If a defense directly assails or merely controverts a plaintiff's prima facie case, it is not an affirmative defense." (cleaned up)). Rather, because it is part of the cause of action that a claimant must allege and prove, a claimant's lack of licensure is an issue that "may be raised before or during trial." *Lignell v. Berg*, 593 P.2d 800, 805 (Utah 1979); *see also* Utah R. Civ. P. 12(h). Applying section 58-55-604 as a pleading requirement and a component of the claim is compelled both by the plain language of the statute and our caselaw. Therefore, the district court incorrectly construed the statutory requirement as an affirmative defense that had been waived.

¶25 We vacate that portion of the district court's judgment denying InBalance's cross-motion for summary judgment and granting judgment to R4 on its affirmative claims. But we do not reverse, because InBalance could be entitled to the relief sought in its motion only if the court on remand determines as a matter of law that no common law exception to the nonrecovery provision applies. The parties briefed, but the district court did not address, whether an exception might apply here. We remand for the district court to consider the remaining arguments raised

in InBalance's motion regarding R4's ability to recover as an unlicensed claimant.[4]

B.      R4's Motion for Summary Judgment

¶26    InBalance next argues that the district court erred in granting summary judgment in favor of R4 on InBalance's counterclaim for breach of contract. The district court dismissed InBalance's counterclaim in part because InBalance—by not providing a passable calculation of damages—failed to provide evidence of any damages that were caused by R4's alleged breaches of the contract. The court determined that the lack of causation evidence made InBalance's claim for damages speculative and that InBalance therefore could not prove damages as a matter of law. On appeal, InBalance contends that it "sufficiently quantified [its] damages . . . to avoid summary judgment." We disagree.

¶27    Because InBalance bore the burden of production as to its breach of contract claim, R4 could prove it was entitled to summary judgment by showing that InBalance had no evidence to support any one of the elements of its claim for breach of contract, including damages. *See Salo v. Tyler*, 2018 UT 7, ¶ 2, 417 P.3d 581 ("[W]here the burden of production falls on the nonmoving party, . . . the moving party may carry its burden of persuasion without putting on any evidence of its own—by showing that the nonmoving party has no evidence to support an essential element of a claim."); *America West Bank Members, LC*

---

4. Our vacatur of the district court's judgment in favor of R4 is a narrow one. We do not vacate the court's determinations of the amounts owed to R4 under the contract, R4's entitlement to that amount, or the dismissal of InBalance's counter-claims, *see infra* section II.B. We vacate the court's order only inasmuch as it permitted R4 to recover without R4 either satisfying the requirements of section 58-55-604 or meeting an exception thereto.

*v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 ("The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." (cleaned up)). Here, R4's motion for summary judgment called into question InBalance's ability to prove damages resulting from the claimed breach by asserting that "InBalance alleged $185,723.79 of damages 'based upon the original costs of labor and fixtures to perform the work as identified in the R4 contract as well as the cost of correct and functioning fixtures and the cost of repair for the items installed and/or constructed,'" and nothing more. InBalance responded by asserting its claim for damages was supported by the "voluminous documents" supplied in discovery and by citing a declaration of its counsel. That declaration averred, "During discovery, my office supplied voluminous documents in response to R4's requests including a number of supplemental sets of responses and documents." But the declaration did not refer to any specific document or evidence proving damages nor did it independently set forth a calculation of damages. And InBalance did not include any of the voluminous documents or any other evidence calculating its damages in response to R4's motion for summary judgment. This is likely in part because InBalance failed to timely designate an expert to testify and prove the damages resulting from any claimed breach.

¶28    The absence of evidence to support its claim of damages caused by R4's alleged breaches is fatal to InBalance's breach of contract cause of action. And InBalance's contention that a fact issue exists as to the amount of damages does not negate that R4 was entitled to judgment as a matter of law where InBalance could not prove that any such damages, no matter the amount, were caused by the asserted breaches of contract. *See* Utah R. Civ. P. 56(a). A dispute as to the amount of damages is immaterial if there is no evidence to show that the damages arose from the harm alleged. *See Renegade Oil, Inc. v. Progressive Cas. Ins. Co.*, 2004 UT App 356, ¶ 12, 101 P.3d 383 ("To prove damages a plaintiff (1) must prove the fact of damages by

evidence that gives rise to a reasonable probability that the plaintiff suffered damage as result of a breach and (2) must prove the amount of damages." (cleaned up)). Upon consideration of the motion, the only information before the district court regarding InBalance's damages was the claimed amount of $185,723.79.[5] InBalance did not supply the court with any evidence tying the alleged breach of contract to any particular amount of damages claimed. The absence of evidence to establish that causal connection precluded InBalance from asserting that the fact was disputed and it entitled R4 to judgment as a matter of law because InBalance could not carry its burden of production. *See* Utah R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be genuinely disputed or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *id.* R. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by paragraph (c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the moving party is entitled to it . . . .").

---

5. In the order dismissing InBalance's claim, the district court observed that InBalance's failure to provide evidence of damages in response to R4's motion for summary judgment reflected the party's inattentiveness to the issue throughout the case. The court indicated that InBalance did not meet its rule 26 obligation to provide a calculation of the damages. *See* Utah R. Civ. P. 26(a)(1)(C). The court also noted that InBalance failed to adequately answer an interrogatory requesting a calculation of damages. *See id.* R. 33(b). Those failures could have permitted the court to sanction InBalance, *see id.* R. 26(d)(4); *id.* R. 37(b), and further justified the court's decision to dismiss InBalance's claim for its inability to prove damages. But the court instead rested its decision on summary judgment principles.

¶29 On appeal, InBalance does not dispute the district court's conclusion that it failed to include a calculation of damages in opposing R4's summary judgment motion. Rather, it asserts that the court had some evidence of damages in the form of Schnabel's declaration outlining expenses of approximately $60,000. But InBalance does not engage with the district court's determination that the claimed damages were "not tied to any of the breaches of which Schnabel complain[ed]" in her declaration. Additionally, in responding to R4's motion, InBalance did not cite Schnabel's declaration as evidence of damages resulting from the alleged breaches—relying instead only upon the declaration of its counsel. *See id.* R. 56(c)(3) ("The court need consider only the cited materials."). And InBalance did not raise the argument at the hearing on the motion even after the district court specifically asked it how the damages were tied to the breaches alleged. Consequently, InBalance failed to preserve the claim that Schnabel's declaration provided evidence of damages. *See State v. Johnson*, 2017 UT 76, ¶ 18, 416 P.3d 443 ("Parties are required to raise and argue an issue in the trial court in such a way that the court has an opportunity to rule on it." (cleaned up)). And because InBalance did not ask this court to consider the issue under an exception to the rule of preservation until its reply brief, it waived our consideration of any such argument. *See id.* ¶ 16 ("When a party fails to raise and argue an issue on appeal, or raises it for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court."). Therefore, because the issue is unpreserved, we do not consider whether Schnabel's declaration contained evidence of damages in support of the breach of contract claim. *See State v. Robinson*, 2014 UT App 114, ¶ 12, 327 P.3d 589 ("A party seeking appellate review of an unpreserved issue must articulate the justification for review in the party's opening brief. Thus, a plain error argument presented for the first time in a reply brief is beyond our reach." (cleaned up)).

¶30 Because InBalance failed to provide the district court with any evidence establishing damages caused by the alleged

breaches, the district court correctly granted summary judgment in favor of R4 on InBalance's counterclaim for breach of contract.

### III. Attorney Fees and Costs on Appeal

¶31    The district court granted attorney fees to R4 under the contract as the prevailing party. Because we vacate the district court's summary judgment order in part, we also necessarily vacate the district court's determination that R4 is entitled to attorney fees as the prevailing party under the contract. And because our decision does not resolve the litigation and there is no prevailing party as of yet, we deny InBalance's request for attorney fees. On remand, the district court is free to award attorney fees, if it deems appropriate, at the conclusion of the litigation.

¶32    Each party to bear its costs on appeal. *See* Utah R. App. P. 34(a).

### CONCLUSION

¶33    We affirm the district court's order denying InBalance's motion to extend the time for expert disclosure because InBalance's failure to include the hearing transcript containing the court's reasoning undermines InBalance's ability to show that the court abused its discretion. We also affirm the district court's order granting summary judgment in favor of R4, dismissing InBalance's counterclaim for breach of contract.

¶34    We vacate the portions of the district court's order denying summary judgment to InBalance but granting summary judgment to R4 as to R4's affirmative claims for relief on the basis that the licensure defense was waived, and we remand the case for resolution of InBalance's motion consistent with this opinion. We also consequently vacate the district court's final judgment in favor of R4 and its award of attorney fees to R4 as the prevailing party.

———————